Aaron J. Solomon, Esq.
OVED & OVED LLP
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, NY 10013
Tel.: 212.226.2376

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------------------X

CMT DEVELOPERS LLC and DAVID KRAMER,

                 *Plaintiffs/Counterclaim-Defendants,*

      -against-

ACIER HOLDINGS LLC, KNIGHT CONSTRUCTION,
LLC, DOV ZABROWSKY, MOSHE GLATZER, and
JACOB GLATZER,

                 *Defendants/Counterclaimants.*
----------------------------------------------------------------------X

Case No.: 3:21-cv-12517

Hon. Zahid N. Quraishi

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS/COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS DEFENDANTS/COUNTERCLAIMANTS' FIRST COUNTERCLAIM

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion to dismiss Defendants' First Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

The Court should dismiss Defendants' First Counterclaim because documentary evidence demonstrates, *and Defendants admit*, that Kramer is the sole owner of CMT, the entity that is the sole owner of the Property.  As such, Defendants' allegation that they have an ownership interest in CMT or the Property is meritless.  As detailed in Point I below, while Defendants attempt to salvage their First Counterclaim by claiming that they are not actually seeking an ownership interest in CMT, but rather are relying on an alleged oral joint venture agreement for a profit participation in CMT's development of the Property that predates Kramer's acquisition of CMT, such allegations fail because they are contradicted by (A) Defendants' own Counterclaim; and (B) the undisputed written agreement whereby CMT was assigned to Kramer without Defendants retaining any interest in the Property or its development.  Finally, as detailed in Point I.C below, all of the cases Defendants cite are inapplicable because none of them concern oral joint venture agreements that are refuted by documentary evidence.[2]

## ARGUMENT

## I

## THE COURT SHOULD DISMISS THE FIRST COUNTERCLAIM

In the Moving Brief, Plaintiffs demonstrated that Defendants' claim of an unspecified ownership interest in CMT is meritless and barred by documentary evidence demonstrating that CMT

---

[1] Unless indicated otherwise, capitalized terms shall have the same meaning as set forth in Plaintiffs' moving brief, dated October 27, 2021 (the "Moving Brief" or "Mov. Br.").

[2] Recognizing the frivolity of their position, and the inapplicability of their case law, on November 17, 2021—a few short weeks after Plaintiffs filed this motion—Defendants filed a lis pendens on the Property in a transparent attempt to regain leverage.

is wholly owned by Kramer.  *See* Mov. Br. at 3-7; *Perry v. Lee*, No. 19-17899 (FLW) (TJB), 2020 U.S. Dist. LEXIS 107631 (D.N.J. June 19, 2020) (dismissing claims of an alleged ownership interest in a company that were contradicted by documentary evidence referenced in plaintiff's complaint). Indeed, this documentary evidence, which was incorporated by reference in Defendants' Counterclaim, but not attached, includes a certification signed by Acier—after the date it allegedly acquired its interest in CMT—certifying that an operating agreement listing Kramer as CMT's sole member was "a true, complete and correct copy" of CMT's AOA.  Mov. Br. at 3-4.

In opposition, Defendants do not challenge any of Plaintiffs' documentary evidence, and expressly state that they "have no objection to this Court considering" such evidence.  Opp. Br. at 7, n. 3.  Instead, Defendants attempt to rewrite their First Counterclaim by repeatedly stating that they are *not* disputing that Kramer is the sole owner of CMT, the entity which purchased and owns the Property.  *See, e.g.*, Opp. Br. at 1 (admitting that Defendants' Counterclaims do "not dispute that Kramer is the title owner of CMT"), 3 (stating that the Counterclaims allege that "the Property was purchased by CMT" and that "CMT was sold to Kramer in 2016").

Rather, Defendants attempt to avoid dismissal by suddenly, and for the first time, claiming that they are *not* seeking an ownership interest in CMT, but rather *a profit participation* in an alleged oral joint venture to develop the Property that allegedly "predates Kramer's ownership of CMT."  *Id.* at 3; *accord id.* at 9 ("Defendants expressly allege that a joint venture to develop the Property existed between Acier and Kramer after CMT purchased the Property but *prior to* Kramer's ownership of CMT (emphasis in original)).  This belated and desperate contention cannot salvage Defendants' claims because it contradicts the express allegations in the Counterclaims.  Even if it did not, Defendants cannot rely on an oral joint venture agreement that contradicts documentary evidence, and none of the cases Defendants cite hold anything to the contrary.

A.     **The Counterclaims Expressly Allege an Interest in CMT**

While Defendants repeatedly claim in their opposition that they are only claiming a profit participation interest in the right to develop the Property and not any direct interest in CMT—which they now expressly admit is wholly-owned by Kramer—this allegation directly contradicts Defendants' Counterclaims. Indeed, far from merely claiming an interest in the right to develop the Property, the Counterclaims expressly allege that "Acier is a joint venture partner with Kramer *in CMT*, the venture's nominee with respect to the Jersey Walk Development." Counterclaims ¶ 51.[3]

Thus, while Defendants attempt to now claim that they are not seeking a declaration that they have an interest in "CMT" itself, their own Counterclaims clearly state otherwise, and the Court should reject Defendants' argument for this reason alone and dismiss the First Counterclaim in full.

B.     **Defendants' Allegations of an Oral Joint Venture Agreement Are Meritless**

Even if Defendants' newly-minted argument was not directly contradicted by their actual Counterclaims—which it is—Defendants' attempt to salvage their claims by relying on an alleged oral joint venture agreement that "*predates* Kramer's purchase of CMT" would still fail because Defendants may not rely on an alleged oral joint venture agreement that contradicts the undisputed documentary evidence. *See Summit Transp. Corp. v. Hess Energy Mktg.* ("*Summit*"), 2019 U.S. Dist. LEXIS 16981 (D.N.J. Feb. 1, 2019) ("the alleged joint venture would contradict the express terms of the Transportation Agreement," where defendant was the sole owner of the property and written agreement did not reference a sharing of profits); *accord Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*, 2006 U.S. Dist. LEXIS 50682, at *21 (S.D.N.Y. July 14, 2006) (no joint venture where "the express provisions of the finance leases at issue . . . are utterly inconsistent with a business enterprise in which Philips and Citicorp were sharing profits and losses").

---

[3] Unless indicated otherwise, emphasis throughout this memorandum is added.

This Court's decision in *Summit* is instructive.  There, the plaintiff claimed to have an oral joint venture agreement with the defendant to share in the profits and losses from the sale of fuel oil. *Summit*, 2019 U.S. Dist. LEXIS 16981, at *5-6.  In addition, the parties had an express written contract regarding that same fuel oil, which did not mention any joint venture and referred to the plaintiff only as a "carrier," not a partner.  *Id.* at *7.  Based on this written contract, the Court rejected any allegation that there was an oral joint venture agreement because such an oral agreement would contradict the written agreement, which contained "no textual support" for such a venture.  *Id.* at *32, 39 ("the alleged joint venture would contradict the express terms of the Transportation Agreement").

The same is true here.  While Defendants claim that they had an oral joint venture agreement that predated Kramer's acquisition of CMT, there is an express written contract assigning CMT to Kramer, which specifically mentions the Property (the "Assignment").  Kramer Aff., **Ex. B**.  Just as in *Summit*, the Assignment contains no mention of any joint venture, and lacks any textual support whatsoever for the assertion that anyone besides Kramer has the right to develop the Property.  *Id.* To the contrary, the Assignment expressly states that no other party "has any past, current or future right, title or interest" in the rights being assigned.  *Id.*  If there were any extant agreement to share in the profits and losses from developing the Property, the Assignment would have referenced such an agreement or carved out such development rights, rather than stating that no one else holds any such interest.[4]

As such, just as in *Summit*, the Court should dismiss the First Counterclaim in full.

---

[4] Notably, Defendants themselves rely on one of this Court's opinions in *Summit*.  However, the opinion Defendants cite merely held that the plaintiff had sufficiently alleged the elements of a joint venture to survive a motion to dismiss without regard to whether such allegations were refuted by documentary evidence.  *See* Opp. Br. at 10 (citing *Summit*, 2015 U.S. Dist. LEXIS 23921 (D.N.J. Feb 27, 2015) (holding that the plaintiff had alleged the various elements of a joint venture)).  In contrast, in the *Summit* decision cited by Plaintiffs above, this Court dismissed that same joint venture claim as barred by the documentary evidence, as the Court should do here.

**C.**    **The Remaining Cases Defendants Cite Are Inapposite**

Tellingly, none of the cases Defendants cite change the fact that their allegations of an oral joint venture agreement *predating* Kramer's acquisition of CMT are belied by the Assignment. Defendants primarily cite three cases between romantic partners where the Court upheld claims for oral joint venture agreements regarding the development of real estate.  *See* Opp. Br. at 11.  However, these cases are all inapposite because none of them involved allegations of an oral joint venture agreement that were refuted by a subsequent written contract, as is the case here.  Instead, all those cases merely concerned was whether New Jersey's statute of frauds permitted the respective oral joint venture agreement; not whether it could exist in the face of a subsequent written agreement.

For example, in *Ruta v. Werner*, 1 N.J. Super 455 (Super. Ct. 1948), a husband sought an accounting of certain real property that was held in his wife's name as part of an alleged oral joint venture to share in the increased value of the property.  *Id.* at 458.  The wife opposed this relief and claimed that the statute of frauds barred the alleged oral joint venture agreement, not that such an oral agreement was refuted by documentary evidence.  *Id.* at 458-59.  The Court rejected the wife's argument and held that the statute of frauds was inapplicable because the plaintiff "does not claim an interest in the land," but rather solely "the increase in value thereof."  *Id.* at 460.

Similarly, in *Ditscher v. Booth*, 13 N.J. Super. 568 (Super. Ct. 1951), the plaintiff alleged that he had an oral joint venture agreement with the defendant, a woman other than his wife with whom he was romantically involved, to operate a restaurant business.  *Id.* at 569.  As in *Ruta*, the defendant did not claim that the oral joint venture agreement was refuted by documentary evidence, but rather that it was barred by the statute of frauds because that restaurant business was to be located on real estate that was in her name.  *Id.* at 569-70.  The Court rejected that defense, holding that the parties' course of dealings had sufficiently demonstrated that the agreement was to operate the restaurant.  *Id.* at 571-72.

Likewise, in *Gruber v. Rixford*, 2007 N.J. Super. Unpub. LEXIS 2602 (App. Div. May 16, 2017), the plaintiff alleged that he and his romantic partner, the defendant, had an oral joint venture to acquire a townhouse, which was placed solely in the defendant's name.  The defendant claimed that he was entitled to full ownership of the townhouse, citing the statute of frauds.  While the lower court dismissed the plaintiff's claim on this basis, the Appellate Division reversed that decision because the New Jersey's statute of frauds had recently been amended to permit oral agreements regarding real estate.[5]

Finally, Defendants cite *D'Aiuto v. City of Jersey City*, 2007 U.S. Dist. LEXIS 57646 (D.N.J. Aug. 8, 2007), for the proposition that Plaintiffs cannot contest whether Defendants sufficiently alleged the existence of a joint venture on reply because they allegedly did not do so in their Moving Brief.  This argument is meritless, as the Moving Brief is based on the proposition that Defendants' First Counterclaim does not state a claim because it is barred by documentary evidence.  Even if that were not the case, the case Defendants cite itself admits that the Court has discretion to consider new facts and arguments on reply.  *Id.* at n. 1.

Thus, Defendants' case law fails to refute the fact that the subsequent Assignment refutes their allegation of a prior oral joint venture agreement, and thus fails to salvage their claim.

---

[5] If anything, *Ruta* and *Gruber* demonstrate that the Court should dismiss the First Counterclaim as barred by the statute of frauds because, to the extent Defendants' opposition argues that they are claiming an interest in the Property itself, Defendants fail to identify the agreement by which they obtained such an interest.  Opp. Br. at 2 (stating that they seek a declaration that Acier "'has an ownership interest in the Jersey Walk Development,' ***that is, the Property***").

## <u>CONCLUSION</u>

For the reasons set forth herein and in the Moving Brief, the Court should grant Plaintiffs'

motion in full and dismiss the First Counterclaim with prejudice.

Dated: New York, New York
       December 13, 2021

 

                                                 Aaron J. Solomon, Esq.
                                                 OVED & OVED LLP
                                                 *Attorneys for Plaintiffs*
                                                 401 Greenwich Street
                                                 New York, NY 10013
                                                 Tel.: 212.226.2376