**MORRISON COHEN LLP**
Y. David Scharf
Christopher Milito (pro hac vice forthcoming)
Collin A. Rose (pro hac vice forthcoming)
909 Third Avenue
New York, New York 10022
Tel.: 212-735-8600
Fax: 212-735-8708

*Attorneys for Defendants Acier Holdings LLC,*
*Knight Construction, LLC, Dov Zabrowsky, Moshe*
*Glatzer and Jacob Glatzer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CMT DEVELOPERS LLC, and DAVID KRAMER , <br><br> Plaintiffs, <br><br> -against- <br><br> ACIER HOLDINGS, LLC, KNIGHT CONSTRUCTION, LLC, DOV ZABROWSKY, MOSHE GLATZER, and JACOB GLATZER, <br><br> Defendants. | Case No.: 3:21-cv-12517 |

## MEMORANDUM OF LAW IN OPPOSITION TO THE
## PLAINTIFFS' MOTION TO DISCHARGE THE *LIS PENDENS*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ......................................................................................................... 6

I.      DEFENDANTS' *LIS PENDENS* SATSIFIES THE REQUREMENTS
OF N.J.S.A. § 2A:15-6......................................................................... 6

      A.     New Jersey Law Recognizes That A Request For A Constructive
Trust Affects The Title To Real Property Or A Lien Or Encumbrance
Thereon ..................................................................................... 6

      B.     Plaintiffs' Arguments To The Contrary Rely On Misrepresentations
To This Court Of Defendants' Counterclaims............................. 9

II.     DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIM
JUSTIFIES THE LIS PENDENS ....................................................... 11

      A.     Defendants' Adduced Proof Shows A Probability Of Success ........... 11

      B.     Plaintiffs' Arguments In Its Motion Are Baseless ................................ 14

      C.     The *Lis Pendens* Is Needed To Protect Defendants' Rights ................ 16

CONCLUSION ................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*7-Eleven, Inc. v. Sodhi*,
   No. 13-3715 (MAS)(JS), 2016 U.S. Dist. LEXIS 15733 (D.N.J. Feb. 9, 2016) ....................13

*Gabel v. Pines*,
   No. 88-1509 (CSF), 1988 U.S. Dist. LEXIS 6398 (D.N.J. June 15, 1988) ..............................7

*Summit Transp. Corp. v. Hess Energy Mktg., LLC*,
   No. 14-5119, 2015 U.S. Dist. LEXIS 23921 (D.N.J. Feb. 27, 2015) ...............................15, 16

*Summit Transp. Corp. v. Hess Energy Mktg.*,
   No. 14-5119 (JMV) (MF), 2019 U.S. Dist. LEXIS 16981
   (D.N.J. Feb. 1, 2019)..................................................................................................14, 15, 16

### STATE CASES

*B. J. I. Corp. v. Larry W. Corp.*,
   183 N.J. Super. 310 (Super. Ct. 1982) .......................................................................................7

*Brown v. Brown*,
   No. A-0384-21, 2022 N.J. Super. LEXIS 12 (App. Div. Feb. 3, 2022) ........................8, 9, 10

*Fravega v. Security Sav. & Loan Ass'n*,
   192 N.J. Super. 213 (Super. Ct. 1983) ...............................................................................11, 12

*Manzo v. Shawmut Bank, N.A.*,
   291 N.J. Super. 194 (Super. Ct. 1996) .....................................................................................18

*O'Boyle v. Fairway Products, Inc.*,
   169 N.J. Super. 165 (App. Div. 1979) ........................................................................................8

*Polk v. Schwartz*,
   166 N.J. Super. 292 (App. Div. 1979) ........................................................................................7

*Wendy's of South Jersey, Inc. v. Blanchard Mgmt. Corp.*,
   170 N.J. Super. 491 (Super. Ct. 1979) .....................................................................................17

### STATUTES & RULES

28 U.S.C. § 1746................................................................................................................................12

N.J.S.A. § 2A:15-6.................................................................................................................... *passim*

N.J.S.A. § 2A:15-7(b).............................................................................................................. *passim*

Defendants/Counterclaimants Acier Holdings LLC ("Acier"), Knight Construction, LLC ("Knight"), Dov Zabrowsky, Moshe Glatzer, and Jacob Glatzer (collectively, the "Defendants") respectfully submit this memorandum of law in opposition to the motion filed by Plaintiffs CMT Developers LLC ("CMT") and David Kramer ("Kramer") (collectively, the "Plaintiffs") on February 10, 2022 (the "Motion"), which requests this Court to discharge the *lis pendens* filed by Defendants in connection with this action (the "*Lis Pendens*").

## PRELIMINARY STATEMENT

In Plaintiffs' Motion, Plaintiffs portray themselves as victims of the *Lis Pendens*, a procedural device meant to protect property in dispute and prevent one party to a litigation from taking actions that might harm, dispose of, or alienate that property by placing third parties on constructive notice of the litigation.  Plaintiffs argue that the *Lis Pendens* has harmed their construction efforts and financing agreements, and accuse Defendants of filing the *Lis Pendens* in a calculated attempt to strong arm a settlement.  Plaintiffs' arguments, however, are nonsense.  As Defendants' Counterclaims demonstrate, and as the evidence submitted with this opposition further supports, Defendants are the actual aggrieved parties in this litigation.  From the beginning, Plaintiffs' Complaint was just Kramer's final step in his attempt to unilaterally wrest control of the Jersey Walk Development from Acier, his co-venturer of over five years.  Now, with the Defendants having filed their Counterclaims and the associated *Lis Pendens*, Plaintiffs' Motion asks this Court to intervene and free them from the *Lis Pendens* and allow them to potentially further harm the Defendants, the Jersey Walk Development, and the Property.  This Court should deny Plaintiffs' Motion, and sustain the *Lis Pendens*, for at least three reasons.

*First*, Plaintiffs' Motion incorrectly asserts that Defendants' first counterclaim falls outside the bounds of N.J.S.A. § 2A:15-6 because it does not "affect the title to real estate or a lien or

encumbrance thereon." This is categorically false and Plaintiffs only make this argument by misrepresenting Defendants' first counterclaim as seeking an interest in CMT, not the Property and Jersey Walk Development. Plaintiffs' mischaracterization, however, is contradicted by the very text of Defendants' Counterclaims, which clearly requested in its *ad danum clause* "the imposition of a constructive trust with respect to the Property and Jersey Walk Development." Well-established New Jersey law establishes that this request for relief in an *ad danum* clause justifies a *lis pendens* under N.J.S.A. § 2A:15-6.

*Second*, Plaintiffs' Motion should be denied because Defendants can show, and have shown here, that "there is a probability that final judgment will be entered in favor of the [Defendants] sufficient to justify the filing or continuation of the notice of [the *Lis Pendens*]." *See* N.J.S.A. 2A:15-7(b). In particular, Defendants have included with this memorandum of law the Declaration of Dov Zabrowsky, an individual Defendant and a principal of Defendants Acier and Knight. Annexed to Zabrowsky's Declaration are numerous examples of loan documents, agreements, and e-mails, all demonstrating that Acier and its principals regularly signed and executed documents alongside Plaintiff Kramer on behalf of, and in furtherance of, the Jersey Walk Development. This evidence strongly supports Defendants' first counterclaim, which seeks a declaration that Acier and Kramer are co-venturers with respect to the Jersey Walk Development. This evidence also puts the lie to Kramer's Complaint, which alleges that Acier was nothing more than an affiliate of the Jersey Walk Development's general contractor, Knight. This substantial evidence suffices to meet Defendants' burden under N.J.S.A. 2A:15-7(b) and entirely refutes Plaintiffs' argument that Defendants' allegation of a joint venture is doomed to fail.

*Finally*, Plaintiffs' Motion should be denied because, contrary to Plaintiffs' suggestions in its Motion, the *Lis Pendens* serves an important purpose in this litigation. Specifically, it places

third parties on constructive notice of this litigation and Defendants' Counterclaims, which seek a constructive trust over the Jersey Walk Development and Property.  By putting third parties on such notice, Plaintiffs are effectively constrained from taking actions that would (i) not preserve the Property and accompanying development, (ii) detrimentally affect the rights of Defendants, and/or (iii) hinder or interrupt this litigation.  These are the historical purposes of a *Lis Pendens* and they are important here.  After all, the impetus for this litigation was Plaintiff Kramer's attempt to wrongfully oust Defendants from having any interest in the Jersey Walk Development.  Thus, if the *Lis Pendens* is removed, Plaintiff Kramer's prior actions suggest that he may take additional actions, including potentially selling the Property and Jersey Walk Development, to further harm the Defendants and/or the Property and Jersey Walk Development.  This should not be allowed, particularly when Plaintiffs' claimed hardships from the *Lis Pendens* are unsupported and conclusory.

 For all of the foregoing reasons, this Court should deny the Plaintiffs' Motion in its entirety.

## **FACTUAL BACKGROUND**

On June 14, 2021, Plaintiffs filed their Complaint in this Court.[1]  ECF Doc. No. 1. According to the Complaint, Kramer is the sole member of CMT, a New Jersey limited liability company, and resides in New York.  *Id.* ¶¶ 2-3.  By contrast, as established by Defendants' Answer with Counterclaims, both Acier Holdings LLC and Knight Construction LLC are New Jersey limited liability companies, while all of the individual Defendants are New Jersey residents.  ECF Doc. No. 16, Answer ¶¶ 5-9, Countercl. ¶¶ 8-9.  In their Complaint, Plaintiffs brought four causes of action for declaratory judgment, unjust enrichment, conversion, and false advertising.  ECF

---

[1]     Additional relevant facts are set forth in the accompanying Declaration of Dov Zabrowsky, dated February 22, 2022 (the "Zabrowsky Declaration").

Doc. No. 1 ¶¶ 28-46.  Plaintiffs' declaratory judgment action seeks a declaration that "Defendants do not possess any ownership interest in CMT and/or the Development Project."  *Id.* at 7.

On October 6, 2021, following Plaintiffs' service of the Complaint, Defendants answered the Complaint and asserted their own counterclaims on behalf of Acier Holdings LLC and Knight Construction LLC.  ECF Doc. No. 16.  Defendants' Counterclaims pled significantly more allegations concerning the parties' relationship than Plaintiffs' barebones Complaint and included claims for declaratory judgment, breach of contract, and quantum meruit, with some of these claims pled in the alternative.  *Id.* ¶¶ 57-94.  The first declaratory judgment action brought by Defendants seeks a declaration that "(i) Acier and Kramer are co-venturers with respect to the Jersey Walk Development pursuant to both the parties' agreement and course of conduct; (ii) Acier therefore has an ownership interest in the Jersey Walk Development; and (iii) Acier and Kramer shall share in the profits and losses of the Jersey Walk Development consistent with their January 11, 2018 agreement, as well as the imposition of a constructive trust with respect to the Property and the Jersey Walk Development."  *Id.* at 26; *see also id.* ¶¶ 66-69.

Despite Defendants' detailed Counterclaims, Plaintiffs nevertheless moved to dismiss Defendants' first declaratory judgment counterclaim (as described above) on October 27, 2021.  ECF Doc. Nos. 19-21.  In their motion to dismiss, Plaintiffs advanced a novel theory for dismissal: despite Defendants' first counterclaim (and prayer for relief thereon) clearly and explicitly requesting a declaration that Acier was a co-venturer with respect to the Jersey Walk Development as a whole (without any reference to CMT), Plaintiffs chose to continuously misrepresent Defendants' first counterclaim as only seeking an interest in Plaintiff CMT in an attempt to rely upon contradictory documentary evidence.  *E.g.* ECF Doc. No. 20 at 1.  In support of this theory of dismissal, Plaintiffs frivolously cited only one paragraph of Defendants' Counterclaims (¶ 51),

all while ignoring all of the remainder of Defendants' Counterclaims, which clearly alleged an oral joint venture between Kramer and Acier Holdings LLC that included within it the Jersey Walk Development property owned by CMT. Defendants replied as such in their opposition to Plaintiffs' motion to dismiss on November 22, 2021. ECF Doc. No. 23. Plaintiffs replied to Defendants' opposition on December 13, 2021, raising arguments made for the first time on reply, including Plaintiffs' new assertion that Defendants' allegations of an oral joint venture were also refuted by the documentary evidence in question.[2]  ECF Doc. No. 30.

Prior to opposing Plaintiffs' spurious motion to dismiss, Defendants' filed a notice of *lis pendens* in connection with their Counterclaims before this Court on November 17, 2021 (the "*Lis Pendens*"). ECF Doc. No. 22. The *Lis Pendens* was filed by Defendants because Defendants' pending Counterclaims include a request for a declaration of ownership and a constructive trust with respect to the property underlying the Jersey Walk Development. ECF Doc. No. 16 at 26. On December 3, 2021, weeks after it was filed, Plaintiffs filed a letter with this Court requesting the Court vacate the Notice of *Lis Pendens*. ECF Doc. No. 26. On December 6, 2021, with little notice, Defendants opposed Plaintiffs' letter-motion. ECF Doc. No. 27. On December 7, 2021, this Court issued an Order to Show Cause (the "OTSC"), requesting the parties to show cause "as to why State Court is not a more suitable venue to adjudicate this dispute than this Court." ECF Doc. No. 28. On January 7, 2022, and January 21, 2022, Plaintiffs and Defendants, respectively, responded to the OTSC. ECF Doc. Nos. 32-33. On January 31, 2022, this Court withdrew the OTSC and ordered Plaintiffs to file, on or before February 10, 2022, a "motion for a determination

---

[2]       Tellingly, Plaintiffs' memorandum of law in support of their motion to dismiss did not address Defendants' allegations of an oral joint venture. In fact, in Plaintiffs' memorandum of law, the phrase "joint venture" only appears once, in Plaintiffs' statement of facts. ECF Doc. No. 20 at 2.

as to whether there is a probability that final judgment will be entered in favor of [Defendants/Counterclaim Plaintiffs] sufficient to justify the filing or continuation of the notice of lis pendens."  ECF Doc. No. 34.  Accordingly, on February 10, 2022, Plaintiffs filed the instant Motion.  ECF Doc. Nos. 35-37.

## ARGUMENT

Plaintiffs' Motion seeks to show that Defendants cannot meet their burden under N.J.S.A. 2A:15-7(b) to show that "there is a probability that final judgment will be entered in favor of the [Defendants] sufficient to justify the filing or continuation of the notice of lis pendens."  Plaintiffs advance three arguments as to why *Lis Pendens* should be discharged: (i) that the Defendants' Counterclaims do not concern an interest in real property or lien or encumbrance thereon, (ii) that Defendants' first counterclaim is baseless and belied by documentary evidence, and (iii) that the *Lis Pendens* is not meant to put third parties on notice of Defendants' counterclaims, but rather is "tactically designed to prevent Plaintiffs from accessing financing on the Property."  Pls. Br. at 7-8.[3]  All three of these arguments lack any basis in fact or law, and Plaintiffs' Motion should be denied in its entirety.

**I.    DEFENDANTS' *LIS PENDENS* SATSIFIES THE REQUREMENTS OF N.J.S.A. § 2A:15-6**

**A.    New Jersey Law Recognizes That A Request For A Constructive Trust Affects The Title To Real Property Or A Lien Or Encumbrance Thereon**

N.J.S.A. § 2A:15-6 authorizes a notice of pendency to be filed in connection with any action, state or federal, "the object of which is to . . . affect the title to real estate or a lien or encumbrance thereon."  Because a notice of pendency may be filed as soon as a complaint is filed, "a motion to discharge a *lis pendens* may be granted only if the complaint fails to recite

---

[3]    "Pls. Br." refers to the memorandum of law filed by Plaintiffs in support of the Motion.

unequivocally a cause of action entitling plaintiff to the *lis pendens*." *Gabel v. Pines*, No. 88-1509 (CSF), 1988 U.S. Dist. LEXIS 6398, at *5 (D.N.J. June 15, 1988).  Accordingly, the first inquiry for this Court is whether Defendants' Counterclaims "affect the title to real estate or a lien or encumbrance thereon," as required by N.J.S.A. § 2A:15-6.  New Jersey law dictates which causes of action may satisfy this requirement.  For example, New Jersey courts have long recognized that actions for specific performance of a contract to sell property justify the filing of a *lis pendens*. *E.g. B. J. I. Corp. v. Larry W. Corp.*, 183 N.J. Super. 310, 318 (Super. Ct. 1982) (finding that party properly filed *lis pendens* in connection with suit pursuing alternative relief, including specific performance).

Relevant here, Defendants' first counterclaim explicitly requests "the imposition of a constructive trust with respect to the Property and the Jersey Walk Development."  Countercl. at 26; *see also* Countercl. ¶¶ 66-69.[4]   In their Counterclaims, Defendants allege that a constructive trust with respect to the Property and the Jersey Walk Development is warranted to (i) "maintain the status quo," and (ii) "remedy [Plaintiff] Kramer's maneuvers to unjustly enrich himself at Acier's expense by claiming the entire Jersey Walk Development as his own."  Countercl. ¶¶ 67-68.

Crucially, New Jersey law is crystal clear: a request for the imposition of a constructive trust upon real property justifies the filing of a *lis pendens*.  *See Polk v. Schwartz*, 166 N.J. Super. 292, 298 (App. Div. 1979) ("There is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of lis pendens may be filed under a statute such as ours."); *Gabel*, 1988 U.S. Dist. LEXIS 6398, at *6 (upholding *lis pendens* where complaint,

---

[4]     Throughout the argument portion of this memorandum of law, Defendants will cite to ECF Doc. No. 16 as "Countercl.," referring to the allegations made in Defendants' Counterclaims.

taken as true, sought the imposition of a constructive trust upon real property); *O'Boyle v. Fairway Products, Inc*., 169 N.J. Super. 165, 166 (App. Div. 1979) (upholding *lis pendens* where the complaint "clearly and unequivocally demanded judgment imposing a constructive trust on certain real property" and asserted that defendants took title to the realty in violation of a partnership). Thus, because Defendants requested the imposition of a constructive trust in connection with their first counterclaim, Defendants' *Lis Pendens* was properly filed and meets the requirements of N.J.S.A. § 2A:15-6.

A case decided just this month by New Jersey's Appellate Division reaffirms these principles and further confirms that the Defendants' *Lis Pendens* was properly filed.  In *Brown v. Brown*, No. A-0384-21, 2022 N.J. Super. LEXIS 12, at *14 (App. Div. Feb. 3, 2022), the Appellate Division considered the reach of the litigation privilege for statements made in a *lis pendens*.  At particular issue on appeal was whether the *lis pendens* in question had been properly filed, as the lower court had found that the litigation privilege did not protect the filer of the *lis pendens* because the prior action only concerned money, and not property, as required by N.J.S.A. § 2A:15-6.  *Id.* at *13.  The Appellate Division reversed, however, observing that "the [lower] judge's holding overlooks that Patricia Brown additionally asserted in her ad damnum clause that she sought the 'impos[ition] [of] a constructive trust upon the proceeds of any sale of the Burger King [p]roperty.'"  *Id.* at *14.  As a result, the Appellate Division concluded that her requested relief for the imposition of a constructive trust brought her *lis pendens* within the protection of N.J.S.A. § 2A:15-6,[5] which the Appellate Division also held is "is not limited to claims challenging or

---

[5]     The Court in *Brown* found that although the filer of the *lis pendens* did not seek title to the property in question, that this was irrelevant because N.J.S.A. § 2A:15-6 also authorizes notices of pendency in connection with liens or encumbrances upon real property.  *Id.* at *15.  Thus, however Plaintiffs construes Defendants' request for a constructive trust—whether as a constructive trust upon the Property itself or as an effective lien upon any proceeds of the Jersey

questioning title." *Id.* at *15.  No different result should occur here: just like the defendant in *Brown,* Defendants requested the imposition of a constructive trust in the *ad danum* clause of their Counterclaims and therefore, Defendants' *Lis Pendens* is within the bounds of N.J.S.A. § 2A:15-6.

Because Defendants' *Lis Pendens* unquestionably satisfies the requirements of N.J.S.A. § 2A:15-6, Plaintiffs' argument fails to demonstrate that there is not "a probability that final judgment will be entered in favor of the plaintiff sufficient to justify the filing or continuation of the notice of lis pendens."  N.J.S.A. 2A:15-7(b).

### B.    Plaintiffs' Arguments To The Contrary Rely On Misrepresentations To This Court Of Defendants' Counterclaims

Attempting to defeat the inescapable reality of New Jersey law, Plaintiffs' Motion engages in the same tired gambit they have utilized throughout the early stages of this litigation: Plaintiffs again misrepresent to this Court that Defendants' first counterclaim (which requests the imposition of a constructive trust) is only seeking an interest in Plaintiff CMT, not the Property or the Jersey Walk Development.[6]  Pls. Br. at 9 ("Defendants' Declaratory Judgment Counterclaim seeks exclusively to determine whether Defendants own a membership interest in CMT LLC—the entity which owns the Property—and not the Property itself.").  In support of this misbegotten theory, Defendants cite to only one allegation of Defendants' entire Counterclaims.  Pls. Br. at 10 (citing Countercl. ¶ 51).  Conveniently, however, Plaintiffs' Motion fails to disclose to this Court: (i) the

---

Walk Development and its sale—the fact remains that Defendants' request for a constructive trust in its allegations and *ad danum* clause suffices to satisfy the conditions of N.J.S.A. § 2A:15-6 for a *lis pendens*.

[6]    Plaintiffs have now misrepresented this fact to this Court, among other places in its motion to dismiss (*see* ECF Doc. Nos. 19, 30) and its letter to this Court concerning the *Lis Pendens*.  ECF Doc. No. 26.  Plaintiffs' repetition of this purposeful misrepresentation of fact to this Court does not make it any truer.

contents of Defendants' Counterclaims' *ad danum* clause, which specifically requests the imposition of a constructive trust "with respect to the Property and the Jersey Walk Development" (Countercl. at 26), (ii) the allegations in Defendants' Counterclaims specifically requesting a constructive trust "with respect to the Property and the Jersey Walk Development in its entirety, (Countercl. ¶ 69), or (iii) the entirety of Defendants' allegations in the Counterclaims, which not only recognize that Plaintiff Kramer is the sole owner of Plaintiff CMT, but specifically allege that Plaintiff Kramer was provided this ownership of CMT *as part of an express joint venture agreement between Acier and Kramer* concerning the Jersey Walk Development and the Property. Countercl. ¶¶ 12-18.  The reason that Plaintiffs rely on such misrepresentations and omissions is clear:  All of these aspects of Defendants' Counterclaims entirely foreclose Plaintiffs' arguments concerning the nature of Defendants' requested relief.

In addition to misrepresenting Defendants' Counterclaims, Plaintiffs also argue that the *Lis Pendens* also may not be supported by a claim that Defendants are entitled to "an award of profits garnered from CMT LLC's Jersey Walk Development."  Pls. Br. at 11.  Putting aside the fact that Plaintiffs' argument is factually wrong—as explained above, Defendants' request for a constructive trust with respect to the Property and the Jersey Walk Development—it is not legally precise either.  As explicitly held by *Brown* above (*see supra* Part I.A), a notice of pendency may be filed where an action's requested relief would create a lien upon the proceeds from a sale of a Property.  *Brown*, 2022 N.J. Super. LEXIS 12, at *15 (noting that N.J.S.A. § 2A:15-6 only requires the object of the suit to affect a "lien or encumbrance" on real property).  Thus, even if this Court were to construe Defendants' requested relief as only seeking a constructive trust over any profits of the sale of the Property or the Jersey Walk Development (which it should not), that would *still* justify Defendants' *Lis Pendens*.  In this context then, Defendants' clear request for a constructive

trust effectively defeats any claim by Plaintiffs that Defendants' *Lis Pendens* is outside the bounds of N.J.S.A. § 2A:15-6.[7]

## II.   DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIM JUSTIFIES THE *LIS PENDENS*

Because Defendants' *Lis Pendens* falls within the bounds of N.J.S.A. § 2A:15-6, Plaintiffs' Motion can only be granted if Defendants cannot show that "there is a probability that final judgment will be entered in favor of the plaintiff sufficient to justify the filing or continuation of the notice of lis pendens." N.J.S.A. § 2A:15-7(b). This standard requires this Court to "weigh the strengths of [Defendants'] case against the detriment imposed on defendant by reason of the filing of the notice of lis pendens." *Fravega v. Security Sav. & Loan Ass'n*, 192 N.J. Super. 213, 219 (Super. Ct. 1983). Here, as shown below, the proof adduced by Defendants at this stage of the litigation demonstrates that: (1) Defendants are likely to succeed on their first counterclaim, (2) Plaintiffs' arguments do not defeat Defendants' first counterclaim, and (3) the *Lis Pendens* filed here serves an important function that outweighs any harm to Plaintiffs. As a result, this Court should conclude that the merits of Defendants' first counterclaim outweigh any detriment imposed on Plaintiffs by virtue of the *Lis Pendens*.

### A.   Defendants' Adduced Proof Shows A Probability Of Success

Accompanying this memorandum of law, Defendants have submitted the Zabrowsky Declaration. Defendant Zabrowsky is a principal of Defendant Acier Holdings, LLC, the party alleged by Defendants to have entered into a joint venture with Plaintiff Kramer concerning the

---

[7]   To make any sense at all, Plaintiffs' argument concerning "request[s] for money damages" (Pls. Br. at 11) must be attempting to claim that Defendants are not actually seeking a constructive trust at all, but only are seeking damages. To the extent the Plaintiffs are so suggesting, this would be yet another misrepresentation by Plaintiffs given Defendants' numerous and unambiguous requests for the imposition of a constructive trust in the Counterclaims. *See* Countercl. ¶¶ 66-69; Countercl. at 26.

Property and Jersey Walk Development.  Countercl. ¶¶ 12-18.  By contrast, in their Complaint, Plaintiffs allege that Acier has no interest in the Property and is merely an affiliate of Knight Construction, LLC, which Plaintiff alleges is the general contractor for the Jersey Walk Development.  ECF Doc. No. 1 ¶ 15.  Essentially then, as between the Complaint and the Counterclaims, the parties take opposite positions on the role of Acier with respect to the Property and Jersey Walk Development.  Plaintiffs maintain that Acier's only role was as an affiliate of the general contractor, while Defendants allege that Acier entered into a joint venture agreement with Plaintiff Kramer concerning the Property and Jersey Walk Development.

Here, Defendants have met their burden under N.J.S.A. § 2A:15-7(b) by adducing proof supporting their allegations that Acier is a joint venturer with respect to the Property and Jersey Walk Development.  In particular, Defendants have annexed to the Zabrowsky Declaration documents demonstrating that (i) Acier served as a guarantor on numerous loans taken out by Plaintiff CMT with respect to the Property and Jersey Walk Development, (ii) Acier and its members regularly formed entities and signed documents on behalf of CMT in furtherance of the Jersey Walk Development, (iii) members of Acier took on personal liability with respect to loans made in connection with the Property and Jersey Walk Development, and (iv) Kramer requested Acier to make certain payments on behalf of the Jersey Walk Development.  *See* Zabrowsky Declaration ¶¶ 21-37, Exs. 3-13.[8]

---

[8]    This Court is unquestionably empowered to consider this evidence submitted by Defendants in connection with Zabrowsky's Declaration because New Jersey courts have held that motions like Plaintiffs' Motion are to be "determined on the pleadings, affidavits and testimony taken by leave of court. . . ."  *Fravega*, 192 N.J. Super. at 217-18 (internal quotation marks omitted); *see also* 28 U.S.C. § 1746 (allowing an unsworn declaration to take the place of an affidavit so long as the declaration is made under the penalty of perjury).

These documents support Defendants' first counterclaim in two important ways.  First, these documents substantiate Defendants' allegations in the Counterclaims, as Defendants' did not solely allege an joint venture by virtue of an oral agreement alone, but rather alleged specific instances in which Acier had assisted the Jersey Walk Development by helping it procure loans, among other things.  For example, throughout the Counterclaims, Defendants alleged that Acier's principals had signed personal and corporate guaranties in support of the Jersey Walk Development.  *See* Countercl. ¶¶ 24, 26, 28.  Zabrowsky's Declaration substantiates Defendants' allegations with actual proof and demonstrates that Acier took on a role with respect to the Jersey Walk Development that only an owner or interest holder in the project would take on.  Thus, the Zabrowsky Declaration establishes that Defendants are likely to succeed in demonstrating that Acier was a joint venturer with respect to the Property and Jersey Walk Development.  *See 7-Eleven, Inc. v. Sodhi*, No. 13-3715 (MAS)(JS), 2016 U.S. Dist. LEXIS 15733, at *14 (D.N.J. Feb. 9, 2016) (finding likelihood of success where party submitted "voluminous documentary evidence" in support of cause of action).

Second, and just as crucially, these documents entirely refute Plaintiffs' Complaint, which claims that Acier is merely an affiliate of the Jersey Walk Development's general contractor, Knight.  But the documents annexed to the Zabrowsky Declaration demonstrate a much more substantial and intertwined relationship between Plaintiff Kramer and Defendant Acier than as alleged in Plaintiffs' Complaint.  After all, if Acier was not a joint venturer with respect to the Jersey Walk Development and Property (and just an affiliate of a general contractor), why would it be entering into costly corporate guaranties to secure funding for the project?  Why would Acier's principals be taking on personal liability for the same ends?  And why would Acier be forming entities and helping the Jersey Walk Development secure preferred tax treatment?

Altogether, by demonstrating Acier's substantial and significant role in managing and financing the Jersey Walk Development, the Zabrowsky Declaration and its annexed documents conclusively show that (i) Defendants' Counterclaims are likely to succeed at showing that Acier and Kramer were joint venturers with respect to the Property and Jersey Walk Development, while (ii) Plaintiffs' Complaint is specious, unsupported and likely to fail.  This showing suffices to justify Defendants' probability of success in connection with N.J.S.A. § 2A:15-7(b).

### B.      Plaintiffs' Arguments In Its Motion Are Baseless

Notwithstanding the foregoing, Plaintiffs argue that Defendants' first counterclaim is foreclosed by the documentary evidence showing that Plaintiff Kramer owns Plaintiff CMT.  Pls, Br. at 12-13.  In this sense, Plaintiffs allude to the same flawed arguments that they made in their motion to dismiss, suggesting that because Kramer owns CMT—a fact specifically alleged by Plaintiffs in their Counterclaims (Countercl. ¶ 17)—no joint venture could exist.  That claim is as specious now as it was originally, and hinges upon Plaintiffs' repeated mischaracterization of Defendants' Counterclaims as only seeking an interest in CMT.  *See supra* Part I.B; *see also* ECF Doc. No. 23.

Nevertheless, even taking Plaintiffs' arguments at face value, they must fail.  In their Motion, Plaintiffs try to address Defendants' allegations of an oral joint venture agreement predating Kramer's acquisition of CMT by arguing that because the assignment did not mention an oral joint venture, one must not have existed.  Pls. Br. at 12-13.  In support of this argument, Defendants place reliance on *Summit Transp. Corp. v. Hess Energy Mktg.*, No. 14-5119 (JMV) (MF), 2019 U.S. Dist. LEXIS 16981, at *39 (D.N.J. Feb. 1, 2019) (hereinafter, "*Summit*"), arguing that Defendants' alleged oral joint venture agreement "will inevitably fail" in the face of the documentary evidence relied upon by Plaintiffs.   Pls. Br. at 12.

Plaintiffs entirely misread and misrepresent *Summit*, however.  First, *Summit* never held that allegations of an oral joint venture agreement were entirely foreclosed because there was a written agreement between the parties that did not reference a joint venture.  In fact, *Summit* only ruled, on a motion for summary judgment (and following discovery no less), that no joint venture existed because (1) discovery evidence had undercut the existence of the elements required for a joint venture (as alleged by the complaint), (2) the written agreement between the parties did not otherwise establish or square with a joint venture, and (3) there was not an implied joint venture for future business based upon the parties' conduct.  *Summit*, 2019 U.S. Dist. LEXIS 16981, at *36.  The agreement between the parties in that case was only a small facet of this analysis.[9] Second, and worse yet, one part of *Summit* that Plaintiffs care to quote ("the alleged joint venture would contradict the express terms of the Transportation Agreement") did not arise from the Court's analysis of the existence of the alleged joint venture, but rather the Court's analysis of plaintiff's claim for a breach of the implied covenant of good faith and fair dealing of the agreement in question.  *Id.* at *40.  The standards on the claims are substantially different, and the Court's conclusion on the implied covenant claim was unrelated to its separate analysis of whether the alleged joint venture existed.[10]

---

[9]     Plaintiffs also fail to address numerous differences exist between the written agreement in *Summit* and the assignment agreement relied upon by Plaintiffs.  First, in *Summit,* the agreement was between the alleged joint venturers.  *Summit*, 2019 U.S. Dist. LEXIS 16981, at *7.  Here, however, Acier (the alleged party to the joint venture) was not a party to the assignment agreement that Plaintiff relies upon.  ECF Doc. No. 37-2.  Moreover, a crucial part of the Court's analysis in *Summit* considered the fact that the agreement between the parties had an integration clause.  *Summit*, 2019 U.S. Dist. LEXIS 16981, at *36.  The assignment agreement in question has no such integration clause, and even if it did, it would not bind Acier as a nonparty to the assignment agreement.  *See* ECF Doc. No. 37-2.

[10]     Plaintiffs also neglect to inform this Court that the *Summit* litigation, prior to the motion for summary judgment, also involved a motion to dismiss, the same stage that this litigation is at.  *Summit Transp. Corp. v. Hess Energy Mktg., LLC*, No. 14-5119, 2015 U.S. Dist. LEXIS 23921

Accordingly, *Summit* does not remotely demonstrate that Defendants' first counterclaim is doomed to inevitably fail. Defendants have adduced (i) the detailed Zabrowsky Declaration laying out the details of the oral joint venture agreement, and (ii) substantial documentary evidence showing the parties taking actions consistent with the alleged joint venture (which was not the case in *Summit*), all of which supplements Defendants' detailed allegations in their Counterclaims. Undoubtedly, once discovery proceeds in this case, additional evidence will only further support Defendants' Counterclaims and foreclose Plaintiff Kramer's claim in his Complaint that Acier has no ownership interest in the Jersey Walk Development and the Property. For all of these reasons, Plaintiffs' arguments concerning the merits of Defendants' first counterclaim must fail, and Plaintiffs' Motion should be denied.

### C. The *Lis Pendens* Is Needed To Protect Defendants' Rights

In their final argument, Plaintiffs assert that, their legal arguments notwithstanding, the *Lis Pendens* should be discharged because "it was tactically designed to prevent Plaintiffs from accessing financing on the Property and cause significant hardship, while providing no substantive benefits to Defendants." Pls. Br. at 13-14. Moreover, Plaintiffs justify their Motion by virtue of the fact that the *Lis Pendens* has caused delays on the Project and constitutes a default on CMT's existing financing. *Id.* at 14. Plaintiffs also assert that the *Lis Pendens* is a strong-arm tactic meant to cause them to settle. *Id.* Unsurprisingly, Plaintiffs submit no documentary evidence demonstrating the purported detriments caused by the *Lis Pendens* and the actual hardships identified in Plaintiffs' declaration span two conclusory sentences. ECF Doc. No. 37 ¶¶ 19-20. Moreover, as laid out in the Zabrowsky Declaration, Plaintiffs' claims of any significant hardship

---

(D.N.J. Feb. 27, 2015). Unsurprisingly, at the motion to dismiss stage, the District Court found that an oral joint venture had been adequately alleged. *Id.* at *14.

are doubtful, as the delays, rising costs, and difficulties in receiving financing draws were problems caused by Kramer that predate the *Lis Pendens*. *See* Zabrowsky Declaration ¶¶ 41-46.

In any event, none of these harms, even if taken as true, justify the removal of the *Lis Pendens*. As Defendants lay out in their Counterclaims, Plaintiffs' institution of this litigation was just the final step of several steps taken by Plaintiff Kramer as part of his efforts to oust Defendant Acier from its role as a co-venturer with respect to the Jersey Walk Development and Property. Countercl. ¶ 40-49. For example, just prior to filing this suit, Kramer tried to convince a lender to no longer disburse proceeds to Acier (as had been the parties' course of conduct) as part of an attempt to unilaterally take control of the Jersey Walk Development. *Id.* ¶¶ 44-45. When this raised red flags with the lender (understandably so), Kramer refinanced the Property through Madison Realty Capital (the same financing he now complains of), only looping Acier in to the refinancing to the extent he needed certain documentation for the lender. *Id.* ¶¶ 46-49. Accordingly, Kramer's very actions demonstrate his intent to seize further control of the Jersey Walk Development and the Property from Acier.[11]

Without the protection of the *Lis Pendens*, Kramer may unilaterally take any number of detrimental actions with respect to the Property and Jersey Walk Development, including, among other things, selling the Property at a significant loss in an effort to enrich himself. Such detrimental actions would undoubtedly be a hindrance to this litigation, affect the parties' pleadings and relief sought, and substantially (and negatively) affect Defendant Acier's rights. Notices of pendency are specifically designed to avoid such disturbances in litigation. *Wendy's of South Jersey, Inc. v. Blanchard Mgmt. Corp.*, 170 N.J. Super. 491, 496 (Super. Ct. 1979)

---

[11]   Plaintiffs' claimed hardships also should be entitled to far less weight than usual, as Plaintiffs instituted this action as part and parcel of Kramer's scheme to divest Acier of its ownership interest in the Jersey Walk Development and the Property.

(observing that the policy of *lis pendens* is meant to prevent, among other things, litigants affecting rights in dispute while a litigation is pending).  In fact, as Zabrowsky attests to in his Declaration, Defendants only filed the *Lis Pendens* because Acier and its partners heard from third parties that Kramer was marketing the Property for a potential sale.  Zabrowsky Declaration ¶¶ 39-40.

Thankfully, the *Lis Pendens* in its current form prevents such actions by Kramer by providing "constructive notice to subsequent interest takers in the property that a dispute exists concerning rights to the property."  *Manzo v. Shawmut Bank*, *N.A.*, 291 N.J. Super. 194, 200 (Super. Ct. 1996).  In doing so, the *Lis Pendens* ensures that the subject of Defendants' first counterclaim, the Jersey Walk Development and Property, will be fully preserved so that full judicial relief can be granted in Defendants' favor, consistent with the ultimate purpose of a *lis pendens*.  *See id.* ("The primary purpose of the notice of *lis pendens* is to preserve the property which is the subject matter of the lawsuit from actions of the property owner so that full judicial relief can be granted, if the plaintiff prevails.").  This Court should not disturb this status quo and risk Kramer taking unilateral action to further deprive Defendant Acier of the project that it has invested so much money and time towards.  Such a result would be unjust and risk Plaintiffs creating harm to the Jersey Walk Development and Property.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court enter an order (i) denying Plaintiffs' Motion in all respects, and (ii) granting such other and further relief as the Court deems just and necessary.

Dated: February 22, 2022

Respectfully submitted,
MORRISON COHEN LLP

 */s/ Y. David Scharf*
Y. David Scharf
Christopher Milito (pro hac vice forthcoming)
Collin A. Rose (pro hac vice forthcoming)
909 Third Avenue
New York, New York 10022

*Attorneys for Defendants Acier Holdings LLC, Knight Construction, LLC, Dov Zabrowsky, Moshe Glatzer and Jacob Glatzer*