# EXHIBIT 8

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "**Agreement**") is entered into as of April __, 2020 by and between (a) CMT Developers LLC ("**CMT**"), Acier Holdings LLC ("**Acier**") and David Kramer ("**Kramer**", and together with CMT and Acier, "**CMT Parties**") and (b) TBG Funding LLC ("**TBGF**"). Collectively, CMT Parties and TBGF shall be referred to as the "**Parties**".

## BACKGROUND

WHEREAS, on March 28, 2018, TBGF made a first mortgage loan to CMT in the amount of $15,500,00.00 (the "**Loan**"), which loan was secured in part by certain real property located in Elizabeth, New Jersey;

WHEREAS, Acier and Kramer guaranteed the Loan;

WHEREAS, the Loan was not repaid on the maturity date of September 26, 2019;

WHEREAS, upon repayment of the Loan on January 16, 2020, CMT paid $559,166.67 (the "**Default Interest**") in default interest to TBGF;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, CMT Parties and TBGF hereby agree as follows:

## AGREED TERMS

1.     <u>Payment by TBGF</u>. TBGF will pay CMT Parties the total sum of $254,166.67 (the "**Settlement Payment**") representing a refund of a portion of the Default Interest as provided herein. The Settlement Payment shall be paid by wire transfer promptly after counsel for CMT Parties delivers an executed copy of this Agreement to counsel for TBGF. TBGF shall provide an executed copy of this Agreement to counsel for CMT Parties not later than the date that TBGF must pay the Settlement Payment.

    The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred and that neither Party nor its attorney(s) will seek any award of attorneys' fees or costs from the other Party, except as provided herein.

2.     <u>Mutual Release</u>. The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future principals, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future principals, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and

suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

        (a)    the payment of Default Interest by CMT made in connection with repayment of the Loan after its maturity date (the **"Dispute"**);

        (b)    matter pending before Beis Din (the **"Litigation"**);]

        (c)    any other matter between the Parties; and/or

        (d)    any claims under federal, state, or local law, rule, or regulation or Jewish law.

This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Dispute.

    3.    <u>No Outstanding or Known Future Claims/Causes of Action</u>. Each Party affirms that it has not filed with any governmental agency or court any type of action or report against the other Party other than the Litigation, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in paragraph 2 above.

    4.    <u>Acknowledgment of Settlement</u>. The Parties, as broadly described in paragraph 2 above, acknowledge that (a) the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Payment, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, as broadly described in paragraph 2 above, including by reason of the Dispute and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Party, as broadly described in paragraph 2 above, for any acts or omissions up to and including the Effective Date, including, without limitation, the Dispute.

    5.    <u>No Admission of Liability</u>. The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement of disputed claims and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by TBGF and is not to be construed as an admission that TBGF engaged in any wrongful, tortious, or unlawful activity. TBGF specifically disclaims and denies (a) any liability to CMT Parties and (b) engaging in any wrongful, tortious, or unlawful activity.

    6.    <u>Agreement is Legally Binding</u>. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in paragraph 2 above, but not a Party, are third-party beneficiaries of this Agreement.

    7.    <u>Entire Agreement</u>. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements,

proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

8. <u>New or Different Facts: No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

9. <u>Interpretation</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

10. <u>Reliance on Own Counsel</u>. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

11. <u>Counterparts</u>. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12. <u>Authority to Execute Agreement</u>. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

13. <u>Effective Date</u>. The terms of the Agreement will be effective when an executed copy of this Agreement is delivered to said counsel for CMT Parties as described in paragraph 1 above (the "**Effective Date**").

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

David Kramer

Dated: April _9_, 2020

for Acier Holdings LLC

Name: JAKE GLATER

Title: PARTNER

Dated: April _8_, 2020

for CMT Developers LLC

Name: David Kramer,

Title: member

Dated: April _8_, 2020

for TBG Funding LLC

Name: _____

Title: _____

Dated: April __, 2020

4