# EXHIBIT 9

| Loan Date: | I | Loan Amount: | I | Loan Number: | I | Maturity Date: | I | Loan Officer |
|---|---|---|---|---|---|---|---|---|
| September 26, 2018 | I | $73,496,002.00 | I | OAP928-818 | I | September 30, 2028 | I | Internal |

The information above is for Lender's use only. It has no applicability to the interpretation or enforcement of this document.

**Parties to this Promissory Note**

| Borrower: | CMT DEVELOPERS, LLC<br>878 Hearthstone Drive<br>Lakewood, NJ 08701 | Lender | JERSEY WALK PHASE 1, LLC<br>Alpha Investments, Inc. as Sole Member<br>344 Grove St., #2 #4072<br>Jersey City, NJ 07302 |
|---|---|---|---|

### PROMISSORY NOTE

To evidence Borrower's obligation to repay the Loan made by the Lender identified above, the Borrower identified above unconditionally promises to pay to the order of Lender the principal sum of Seventy Three Million, Four Hundred Ninety Six Thousand, Two and No/100 Dollars ($73,496,002.00), or so much thereof as is advanced and remains unpaid from time to time, together with interest accrued upon the outstanding principal balance from time to time at the Note Rates which vary depending upon whether the Loan is in the Construction Phase or the Mini Perm Phase (or the Default Rate), if applicable, until all unpaid amounts are paid in full, as set forth below.

**Lenders loan amount is as follows:**

|  |  |
|---|---|
| Total hard cost to build | $60,064,458.00 |
| Land | $21,000,000.00 |
| Base Loan Amount (84% of land & hard cost) | $68,064,458.00 |
| Existing Debt Payoff | $15,500,000.00 |
| 1.85% Origination Fee (Based on base loan amount) ½ paid at closing and ½ paid upon funding of first Draw Request.. | $1,259,192.00 |
| 24 months interest reserves | $5,431,544.00 |
| Total loan amount | $73,496,002.00 |
|  |  |
| Borrower's Down Payment Amount – Borrower will bring one-half of the $1,259,192.00 origination fee ($629,596.00) plus any closing costs to be determined. (Closing costs include, but are not limited to, Title Insurance, Legal Fees, Recording Fees and Underwriting Fees.) | $629,596.00<br>Plus Closing Costs |

Capitalized terms not otherwise defined in the context of a provision of this Note are defined in Section 17.

**1. TERM**

The Loan is due and payable in full on the Maturity Date, which shall be the earlier to occur of:

   a)   September 30, 2028, or

   b)   the date on which Lender exercises its right to accelerate the Loan while any Event of Default (as defined in Section 10) remains uncured after the expiration of the applicable Grace Period (as defined in Section 11).

**2. DISBURSEMENTS**

Funds from this Loan shall be disbursed according to the Draw Schedule attached to the Construction Loan Agreement as Exhibit B and which Borrower has submitted to Lender's underwriting department during the underwriting of this Loan. All Draw Schedule disbursements are conditioned upon any pre-draw contingencies contained in the Loan

Agreement, all reasonable Lender requirements, and Lender's reasonable approval after receipt of a satisfactory inspection approval report by a duly appointed third party commercial real estate construction inspection company (or such other inspector as Lender deems necessary) hired by Lender. The total amount of Draws issued by Lender shall not exceed the face principal Loan amount of this Note (which term includes all modifications, extensions or renewals, if any, thereof from time to time) pursuant to the provisions of the Loan Agreement, the terms and conditions of which are incorporated herein by reference.

### 3. INTEREST RATE

Interest shall accrue on the Loan balance at the Note Rate in the absence of any Event of Default, and at the Default Rate while any Event of Default exists, as provided in this Section 3.

The outstanding balance on the Loan shall accrue interest during the Construction Phase of the Loan at the rate of 3.99% per annum and during the Permanent Phase of the Loan at a rate of 3.99% per annum provided the Loan is not in default. In the event of default, interest shall accrue at the Default Rate as set forth in Section 4 hereof. This Note shall be for a total Term of 120 Months, consisting of 2 Phases; Phase 1 being the Construction Phase and Phase 2 being the Permanent Phase.

Interest is due on only the amount of Loan proceeds disbursed.

The ***Note Rate*** is the interest rate in effect from time to time according to the following ***Interest Rate List***:

**FOR THE CONSTRUCTION TO PERMANENT LOAN AS EVIDENCED BY THE CONSTRUCTION LOAN AGREEMENT DATED SEPTEMBER 26, 2018**

24 MONTH CONSTRUCTION PHASE INTEREST RATE

| Start Date | End Date | Fixed Rate | Variable Rate Index Term and Type | Margin | Rate Forecast Period | Adjustment Frequency | Accrual Method |
|---|---|---|---|---|---|---|---|
| 09/26/2018 | 09/30/2020 | 3.99% Interest Only | NONE | NONE | 24 MONTHS | NONE | Actual/Actual |

96 MONTH MINI PERM PHASE INTEREST RATE

| Start Date | End Date | Fixed Rate | Variable Rate Index Term and Type | Margin | Rate Forecast Period | Adjustment Frequency | Accrual Method |
|---|---|---|---|---|---|---|---|
| 10/01/2020 | 09/30/2028 | 3.99% Interest Only | NONE | NONE | 96 MONTHS | NONE | Actual/Actual |

***Actual/Actual*** means that interest shall accrue on the principal amount of the Loan outstanding from time to time for the actual number of calendar days in each calendar year during which a balance is outstanding under the Loan.

### 4. DEFAULT INTEREST RATE

***Default Rate*** means a rate of interest as set forth in the ***Default Interest Rate List***:

| Default Interest Rate | Term Start Date | Term End Date | Default Rate Becomes Effective |
|---|---|---|---|
| 18.00% | 09/26/2018 | Maturity | On the day after a Payment Due Date and corresponding Grace Period has expired |

The applicable Default Rate will be imposed on the date shown in the "Default Rate Becomes Effective" column above. Lender is not required to notify Borrower that Lender has imposed the Default Rate. Collection of interest at the Default Rate shall not affect Lender's rights to collect other amounts due under this Note or the other Loan Documents, including the Late Charge, or to declare an Event of Default under this Note or the other Loan Documents.

Once Lender imposes the Default Rate, interest accrual shall recommence at the Note Rate only after Borrower tenders and Lender accepts cures of all existing Events of Default.

## 5. PAYMENTS

On each Payment Due Date, Borrower shall make the payment required by this Section 5. PAYMENTS and/or under other provisions of this Note and/or the other Loan Documents to Lender at its address provided above or as later communicated to Borrower in accordance with the Loan Documents, in immediately available U.S. funds. Notwithstanding the foregoing, the parties acknowledge that Lender will draw on the Interest Reserve for payment of such payments so long as there are funds therefor in the account. So long as no Event of Default exists, all sums received in payment of the Loan Obligations shall be applied to the following items in the following order:

| Application Order | Payment Component |
|---|---|
| 1 | Fees, costs and expenses |
| 2 | Escrow Payments |
| 3 | Late Charges |
| 4 | Accrued, unpaid interest |
| 5 | Prepayment Premiums |
| 6 | Reduction of Principal |

During the existence of any Event of Default and following the expiration of the applicable Grace Period, Lender may apply all sums received in connection with the Loan to the Loan Obligations in such order as Lender may elect in Lender's sole discretion from time to time. After the Loan Obligations are paid in full, Lender may apply any remaining sums to any other amounts then due and payable in connection with other Debt in such order as Lender may elect in Lender's sole discretion, and shall remit the balance of such sums, if any, to Borrower after all amounts then due and payable in connection with other Debt have been paid in full.

Periodic payments are due under this Note as specified in the following *Payments List*:

| Start Date | End Date | Payment Composition | Payment Frequency | Amortization Period | Payment Amount |
|---|---|---|---|---|---|
| 09/26/2018 | MATURITY | Interest Only | Monthly on unpaid balance | NONE | All interest accrued through the Payment Due Date or the date of payment, whichever is later. |

Lender may accept partial payment of any amount due without waiving the default occasioned by Borrower's failure to pay the full amount, and no designation or characterization of a partial payment as "payment in full", an accord and satisfaction, or the like shall be binding upon Lender for any purpose.

If Borrower makes any payment to reduce the Debt, whether voluntarily or otherwise, and Lender is later obligated to remit the amount of that payment to Borrower as a debtor in possession, Borrower's trustee in bankruptcy, or any similar Person under Applicable Law, the amount so remitted shall be revived as part of the Debt and considered for purposes of this Note as if it had never been paid to Lender.

## 6. INTEREST RESERVE ESCROW PAYMENTS FOR CONSTRUCTION TO PERMANENT FINANCING ONLY

Lender shall make the interest reserve payments described in the *Interest Reserve Payments List* below *(Interest Reserve Payments)* on each Payment Due Date and as part of each payment. Lender's failure to make any Interest Reserve Escrow Payment shall NOT be an Event of Default. The Interest Reserve Payments are additional security for repayment of the Loan Obligations and may be applied to the Loan Obligations as provided in this Note at any time after the lapse of the Grace Period applicable to any Event of Default.

| Start Date | End Date | Escrow Payment Amount | Interest Rate Paid on Escrow Balance |
|---|---|---|---|
| 09/26/2018 | 09/30/2020 | Payments are made based on Construction Phase Interest rate on the outstanding debt drawn against loan. | 3.99% |

Lender shall establish a segregated Interest Reserve Account into which the Interest Reserve Payments shall be deposited along with each Draw issued. Lender shall maintain the Interest Reserve Account so long as Interest Reserve Payments are required.

Lender may debit the Interest Reserve Account automatically to pay accrued interest on each Payment Due Date, without further notice to or authorization by Borrower.

## 7. LATE CHARGE

If Borrower fails to pay any sum due under any Loan Document by the end of the applicable Grace Period, Lender may impose the Late Charge one time with respect to non-payment of each such sum. If Borrower makes a payment in an amount less than the total then due, the Late Charge shall be assessed on the unpaid portion of the payment. Lender may reject Borrower's tender of any payment after the end of the Grace Period which does not include the Late Charge or accept the tendered amount without waiving Lender's right to collect the Late Charge at a later date. Imposition of the Late Charge shall not affect Lender's rights to collect other amounts due under this Note or the other Loan Documents (including interest at the Default Rate) or to declare a default under this Note or the other Loan Documents.

## 8. PREPAYMENTS

Borrower may prepay the Loan in part or in full at any time upon notifying Lender in writing of the prepayment and paying the Prepayment Premium required below. Amounts prepaid shall be applied as provided in Section 5.

Concurrently with any prepayment, Borrower shall pay to Lender the Prepayment Premium calculated as specified below:

| Start Date | End Date | Fee | Basis of Fee Calculation | Effect on Next Payment |
|---|---|---|---|---|
| 09/26/2018 | 09/30/2019 | 5% | N/A | N/A |

The Prepayment Premium shall be charged on all sums received by Lender in excess of the periodic and/or special payments required under this Note, whether such sums are voluntarily paid or received as a result of condemnation, casualty losses, collection actions, suit, or foreclosure. Notwithstanding the foregoing, no Prepayment Premium shall be charged on any sum received by Lender as a result of condemnation or casualty losses related to any property securing the Loan.

No prepayment shall affect the Payment Due Date specified in this Note for any periodic or special payment due hereunder.

## 9. LOAN SECURITY

The Loan Obligations are secured by the Mortgage, Security Agreement, Assignment of Leases and Fixture Filing and all equipment financed with the Equipment Finance Agreement executed simultaneously herewith, and the liens and security interests in the Collateral created under them.

## 10. EVENTS OF DEFAULT

An *Event of Default* will exist under this Note and each other Loan Document if:

    10.1. Payment Default

        Borrower fails to pay any sum required under this Note or any other Loan Document when due.

    10.2. Other Defaults

        Borrower fails to comply with or perform any of the Loan Obligations, or any other matter defined in another Loan Document as an "Event of Default" occurs or arises.

    10.3. Default on Third Party Obligations

        Borrower fails to pay, comply with, or perform any loan or other obligations owed to any Person other than Lender within the time (including any applicable notice, grace, or cure period) in which such action is required under any applicable agreement, if Borrower's failure results in a material adverse effect on Borrower or its business operations.

    10.4. False Statements

        Lender determines that any warranty, representation, or statement made or furnished to Lender by Borrower or on Borrower's behalf in any Loan Document was false, inaccurate, or incomplete in any material manner when made.

    10.5. Insolvency

        a)  Borrower becomes insolvent,

        b)  Borrower dissolves or terminates its existence as a going business,

c) any Person obtains appointment of a receiver for Borrower, any of the Collateral, or any other material portion of Borrower's property,

d) Borrower makes any assignment for the benefit of creditors,

e) Borrower enters into any type of creditor workout agreement or arrangement with respect to any loan or other obligations owed to a Person other than Lender which has a material effect on Borrower or its business,

f) Borrower commences any Proceeding under any bankruptcy or insolvency law, or

g) any Person other than Lender commences a Proceeding under any bankruptcy or insolvency law against Borrower and Borrower fails to obtain a final dismissal, discharge, or termination of the Proceeding within 90 days after such commencement.

### 10.6. Defective Collateralization

Lender determines that any Loan Document has ceased to be fully enforceable at any time and for any reason, or Lender's recourse against any material portion of the Collateral has been impaired.

### 10.7. Creditor or Forfeiture Proceedings

Any Person commences a Proceeding against the Collateral or any material portion thereof, and Borrower fails to

a) give Lender written notice of the Proceeding within 5 business days after it commences,

b) dispute the validity or reasonableness of the Proceeding in good faith,

c) promptly commence and diligently pursue the defense of the Proceeding, and

d) deposit with Lender within 20 days after commencement of the Proceeding monies, a surety bond, or other security in an amount and form determined by Lender, in its reasonable discretion, to be adequate to secure Lender and the Collateral against the effects of an outcome in the Proceeding adverse to Borrower.

### 10.8. Change in Ownership

Any change in ownership occurs affecting a total of 20% or more of the ownership interests in any of the following:

Borrowers Company as stated in the LOAN AGREEMENT and any of its constituent Entities without Lender's prior written consent.

### 10.9. Adverse Change

Borrower's financial condition suffers a material adverse change or Borrower gives a Termination Notice or otherwise revokes or disputes the validity of or seeks to limit or terminate its liability under this Note.

### 10.10. Intentionally Omitted

## 11. GRACE PERIODS

Except in the cases of

- Non-Curable Defaults (as defined in Section 12 or in another Loan Document),
- Events of Default that occur while an existing Event of Default remains uncured, and
- the full payment of the Loan due on the Maturity Date,

Lender shall not commence any Proceeding to collect the Loan or enforce Lender's rights with respect to the Collateral following the occurrence of an Event of Default unless it remains uncured after the applicable Grace Period has expired.

***Grace Period*** means a period of time beginning on the Payment Due Date of a periodic payment due under the Loan Documents, or the date when Borrower receives Lender's written notice of the existence of a curable Event of Default for which no other curative period is specified in the Loan Documents and ending 15 days later. In the event that an Event of Default cannot reasonably be cured within 15 days, Lender shall grant Borrower a reasonable extension for cure.

***Non-Monetary Default*** means an Event of Default the cure of which requires action other than or in addition to the payment of money to Lender.

## 12. NON-CURABLE DEFAULTS

The following Events of Default, and all other Events of Default specified in any other Loan Document as non-curable (***Non-Curable Defaults***), may not be cured by Borrower or any involved Guarantor and accordingly are not subject to a Grace Period:

- Section 10.4
- Section 10.5 (except Section 10.5(g))
- Section 10.8

## 13. REMEDIES

While any uncured Event of Default exists, and following the expiration of the applicable Grace Period, Lender may commence and pursue any or all of the remedies available to Lender for collection of the Loan and/or enforcement of Lender's rights with respect to the Collateral under Applicable Law and/or the Loan Documents, all in such order and manner as Lender may elect from time to time in Lender's sole discretion.

## 14. NON-RECOURSE

Lender agrees that except as specified in this Section 14, its recourse for recovery of the Loan is limited to the Collateral encumbered in its favor under the Loan Documents. In addition, Lender agrees not to

   a) institute any Proceeding against Borrower to collect any sum owed to Lender under the Loan Documents, other than actions necessary to enforce Lender's rights to foreclose, realize upon, and obtain title to the Collateral, and to collect from Borrower all costs of such Proceeding and realization, all of which rights are specifically reserved, or

   b) seek any deficiency judgment against Borrower in any Proceeding for any portion of the Loan that remains unpaid after Lender completes enforcement of its rights to the Collateral.

The above provisions shall not apply to, and Borrower shall be and remain liable for, all losses, damages, costs, and expenses, including attorneys' fees, suffered or incurred by Lender and arising from or attributable to any of the following:

   14.1. Breach of Warranties; Waste; Fraud

   Any:

   a) breach by Borrower of Borrower's warranties and representations contained in any application or commitment for the Loan or any Loan Document;

   b) intentional or negligent waste or excessive wear and tear of any Collateral by Borrower or any of Borrower's owners, officers, agents, employees, successors, or assigns; or

   c) fraud arising out of or in connection with the procurement, funding, processing, administration, and/or collection of the Loan.

   14.2. Unauthorized Application of Rents

   Borrower's failure, during the existence of any Event of Default, to apply all rents and other income received from or with respect to the Collateral to pay the Loan and/or the normal operating expenses relating to the Collateral, in the manner required under applicable provisions of the Loan Documents or specified by Lender from time to time. .

   14.3. Anticipation of Rents

   Borrower's collection, during the existence of any Event of Default, of any rents or other income received from or with respect to the Collateral more than one month in advance, or which are not earned at the time of collection.

   14.4. Unauthorized Application of Insurance or Condemnation Proceeds

   Any failure by Borrower to apply insurance proceeds and condemnation awards received with respect to the Collateral in accordance with applicable provisions of the Loan Documents.

   14.5. Environmental Matters

   Environmental violations, adverse environmental conditions, and/or the presence of any hazardous substances affecting any of the Collateral.

## 15. USURY

All provisions of this Note which call for the payment of interest are intended to comply with Applicable Law. If the terms of this Note would require the payment of interest in excess of the amount permitted by Applicable Law, the terms of this Note shall be deemed to be Modified to comply with Applicable Law without any action by either party. If Lender receives interest in excess of the amount permitted by Applicable Law, the excess portion of the interest received shall be deemed to be a prepayment of principal and shall be applied in reduction of principal as of the date received. No Prepayment Premium shall be payable with respect to any such prepayment.

**16. WAIVER**

To the fullest extent permitted by law, Borrower and any endorsers, sureties, and guarantors irrevocably:

  a) waive presentment for payment, notice of dishonor, notice of nonpayment, protest, notice of protest, demand, other notices of every kind except notice of default to which a Grace Period is applicable, and all rights to plead any statute of limitations as a defense to any action hereunder;

  b) consent that the time of payment of any installment may be extended from time to time, that all or any part of the Collateral may be released, and that any Person liable under this Note, including any guarantor, may be released, all without notice, and all without affecting the liability of any Person or the lien on that portion of the Collateral not expressly released; and

  c) agree that no delay in enforcing any remedy under this Note or any other Loan Document shall be construed to be a waiver of that or any other remedy.

Lender's failure to exercise any of its rights, remedies, or powers set forth herein or in the other Loan Documents or Lender's acceptance of partial payments or performance shall not constitute a waiver of any Event of Default, but any such right, remedy, or power shall remain continually in force. A waiver of one Event of Default shall not be construed as continuing or as a bar to or waiver of the same type of Event of Default occurring at a later date, any other Event of Default, or any other right, remedy, or power.

**17. DEFINITIONS**

As used in this Note, capitalized terms not previously defined have the meanings set forth below.

  17.1. Applicable Law means the regulations, rules, ordinances, statutes, orders, decrees, and principles of equity of all governmental or quasi-governmental authorities or courts which have jurisdictional authority over Persons living in, and courts located within, the State of Florida and/or any other State(s) whose laws are specified in any other Loan Document as Applicable Law.

  17.2. Collateral means all real or personal property described in and/or encumbered in favor of Lender under the Loan Documents.

  17.3. Debt means the Loan Obligations, and any Future Loan Obligations created from time to time, together with all accrued interest, costs, expenses, and/or other sums advanced by or payable to Lender in connection with any of these Obligations.

  17.3.1. Future Loans means any loans made in the future evidenced and/or secured by any documents which state that such loans relate to the Loan, are to be governed by the Loan Agreement, or are secured by any of the Loan Documents or Collateral as such loans may be Modified from time to time.

  17.3.2. Future Loan Obligations means all indebtedness or obligations arising under or relating to the Future Loans, or any of them.

  17.3.3. Future Loan Documents means the promissory notes, credit agreements, or other instruments that evidence any Future Loans, the documents which secure repayment of the Future Loans (including all exhibits, schedules, and attachments to any of them), and all other documents that are executed in favor of Lender in connection with any Future Loan Obligations, as Modified from time to time.

  17.4. Entity means a corporation, partnership, limited liability company, business or personal trust (and/or any trustee acting on behalf of a trust), governmental body, political subdivision, or other legal entity recognized as a legal person under Applicable Law, or an unincorporated association.

  17.5. Guarantor means any Person who executes a Guaranty in favor of Lender in connection with the Loan.

  17.6. Guaranty means any guaranty agreement that now or hereafter secures the Loan or any part of it, and all Modifications of that agreement.

  17.7. Late Charge means an amount equal to 1.00% of the payment amount then due but unpaid, including the payment due on the Maturity Date unless prohibited by Applicable Law.

  17.8. Loan means a $73,496,002.00 loan evidenced by this Note, as it may be Modified from time to time.

  17.9. Loan Agreement means the Loan Document titled "Loan Agreement" between Borrower and Lender dated June 26, 2018.

  17.10. Loan Obligations means all obligations now or hereafter owed to Lender under the Loan Documents or otherwise in connection with the Loan.

  17.11. Loan Documents means this Note, the Loan Agreement, the documents listed on the Loan Documents Schedule attached to the Loan Agreement (including all exhibits, schedules, and attachments to any of them), and all other documents that have been or are hereafter executed in favor of Lender in connection with the Loan Obligations or any of them, as Modified from

time to time.

17.12. <u>Modify</u> (and its derivatives) means amend, restate, change, extend, renew, alter, terminate, accept the surrender of, or cancel.

17.13. <u>Payment Due Date</u> means each date upon which a periodic payment is due as specified in the Payment Frequency column of the Payments List and each other date specified in this Note or any other Loan Document for payment of any sum due under the Loan. If any Payment Due Date is a Saturday, Sunday, or banking holiday observed by Lender, the Payment Due Date shall automatically be extended to the next following banking business day.

17.14. <u>Person</u> means a human being or an Entity, as the context may permit or require.

17.15. <u>Proceeding</u> means any exercise of self-help, non-judicial remedial or collection action, or matter, litigation, claim, investigation, administrative proceeding, or similar action brought by or before a court, governmental agency, or unit of government that affects Borrower and/or the Collateral.

17.16. <u>Termination</u> Notice means a written notice by a Guarantor to Lender which states that the Guarantor wishes to terminate his liability for additional principal sums advanced or other sums coming due under the Loan and/or for Future Loan Obligations Borrower may incur after Lender receives such notice.

## 18. GENERAL PROVISIONS

Without limiting the effects of any other provision of any Loan Document, the Section of the Loan Agreement entitled "General Provisions" will govern the construction, interpretation, and effects of the provisions of this Note.

*[Signatures on the following page.]*

IN WITNESS WHEREOF, this Agreement has been executed by Borrower as of the day and year first above written.

**BORROWER: CMT DEVELOPERS, LLC**

Signed: _____ Date: 9/26/18
Name: David Kramer
Title: Managing Member

Signed: _____ Date: 9/26/18
Name: Dov B. Zabrowsky
Title: Partner

Signed: _____ Date: 9/26/18
Name: Martin Zecler
Title: Partner

Signed: _____ Date: 9/26/18
Name: Yaakov Glatzer
Title: Partner

Signed: _____ Date: 9/26/18
Name: Moshe Glatzer
Title: Partner

State of New ~~Jersey~~ York
County of ~~Union~~ Kings

Before me, David Friedman of the state and county mentioned, personally appeared **David Kramer, Dov B. Zabrowsky, Martin Zecler, Yaakov Glatzer and Moshe Glatzer** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be the officers of **CMT DEVELOPERS, LLC**, the within named bargainor, a limited liability company, and that such officers executed the foregoing instrument for the purpose therein contained, by personally signing their names.

Witness my hand, at office, this 26 day of Sep, 2018.

_____
Notary's Signature

DAVID FRIEDMAN
Notary Public, State of New York
No. 01FR6346321
Qualified in Sullivan County
Commission Expires 08/08/2020

(Seal)

My commission expires: _____

Construction Promissory Note                                    9

# EXHIBIT
## "A"

[LEGAL DESCRIPTION]

**EXHIBIT "B"**
[ORGANIZATIONAL DOCUMENTS OF BORROWER]

**EXHIBIT "C"**
[RESOLUTIONS AND CONSENT]

**EXHIBIT "D"**
[SERVICE CONTRACTS]