# EXHIBIT 10

THIS INSTRUMENT PREPARED WITHOUT TITLE EXAMINATION BY:

WHEN RECORDED RETURN TO:

Erik Weierholt
Lydolph & Weierholt
131 South 700 East, Ste. 103
American Fork, UT 84003

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS.  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

---

*(SPACE ABOVE THIS LINE FOR RECORDER'S USE)*

CMT DEVELOPERS, LLC,

as Borrower and;

JERSEY WALK PHASE 1, LLC,
with Alpha Investments, Inc. as Sole Member

as Lender

---

**MORTGAGE, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND FIXTURE FILING**
[SECURING FUTURE ADVANCES]

| | |
|---|---|
| Dated: | As of September 26, 2018 |
| Location: | 901-931 E. Jersey St., Elizabeth City, NJ |
| County: | Union County, NJ |

---

COLLATERAL IS OR INCLUDES FIXTURES AND THIS INSTRUMENT SHALL BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING IN ACCORDANCE WITH NEW JERSEY COMMERCIAL CODE.  THIS DOCUMENT MAY BE USED, IF FURNITURE AND FIXTURES AND/OR OTHER MOVABLE PROPERTY ARE PURCHASED FROM PROCEEDS OF THIS LOAN, AS THE "SOURCE" DOCUMENT FOR ANY UCC FILING OR OTHER SECURITIZATION PURPOSE.

1

## MORTGAGE, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND FIXTURE FILING

This **MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND FIXTURE FILING** (as the same may be amended, restated, replaced, supplemented or otherwise modified, being hereinafter referred to as this *"Security Instrument"),* is made as of September 26th, 2018, by **CMT DEVELOPERS, LLC**, a New Jersey entity, having its principal place of business at 878 Hearthstone Drive, Lakewood, NJ, 08701, as Borrower *("Borrower"),* with **JERSEY WALK PHASE 1, LLC**, a New Jersey limited liability company (with Alpha Investments, Inc. as Sole Member), having an address at, 344 Grove St., #2 #4072, Jersey City, NJ 07302 as Lender (together with its successors and assigns, collectively, *"Lender").*

## SUMMARY

As more fully described in the attached and incorporated Construction Loan Agreement(s), including the Promissory Note, the summary of terms is below. In the event of default, Lender shall have any of the independent remedies in either the Promissory Note or the Mortgage, either independently or collectively, including acceleration of all sums due. In the event of default, Lender shall have the right to enforce the Promissory Note or the Mortgage independently or in combination, and each one shall have equal effect for restoring the rights of Lender. Furthermore, Lender, at its sole discretion reserves the right to request a Deed in Lieu of foreclosure if the Borrower is more than 120 days in arrears, for which the signature from the Borrower shall not be unreasonably withheld. After a period of one year from the date of this agreement, Borrower reserves the right to refinance a portion of property, at Borrowers discretion, subject to a payoff issued from Lender based on the parcel and portion of the loan to be paid. After a one-year period, there is no prepayment penalty.

| Loan Date: | I Loan Amount: | I Loan Number: | I Maturity Date: | I Loan Officer |
|---|---|---|---|---|
| September 26, 2018 | I $73,496,002.00 | I OAP928-818 | I September 30, 2028 | I Internal |
| The information above is for Lender's use only. It has no applicability to the interpretation or enforcement of this document. | | | | |
| **Parties to this Security Instrument** | | | | |
| Borrower: CMT DEVELOPERS, LLC<br>878 Hearthstone Drive<br>Lakewood, NJ 08701 | | Lender | JERSEY WALK PHASE 1, LLC<br>Alpha Investments, Inc. as Sole Member<br>344 Grove St., #2 #4072<br>Jersey City, NJ 07302 | |

## WITNESSETH:

WHEREAS, this Security Instrument is given to secure a construction/mini-perm loan (the *"Loan")* in the principal sum of Seventy Three Million Four Hundred Ninety Six Thousand and two dollars ($73,496,002.00) (the *"Debt")* to be advanced pursuant to that certain Construction Loan Agreement, dated as of the date hereof, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the *"Loan Agreement'),* and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower in favor of Lender (as the same may be amended, restated, replaced, supplemented, extended or otherwise modified from time to time, the *"Note").* Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement; and

WHEREAS, the Construction Phase of the Loan shall commence on the date hereof and continue for twenty-four (24) consecutive months at which time the Loan shall convert to a mini-permanent loan for

the then remaining term of the Loan (the "Permanent Phase") as more fully set forth in the Note; and

WHEREAS, each future draw or future obligation under the Note shall be secured by this Mortgage, Security Agreement, Assignment of Leases and Fixture Filing; and

WHEREAS, the maximum principal amount of the indebtedness that from time to time may be secured by this instrument at any one time shall be $73,496,002.00 and the period within which future advances may be made and future obligations may be incurred shall not be later than September 26, 2028, said date being 10 years from and after the date hereof; and

WHEREAS, Borrower desires to secure the payment of the Debt owed by Borrower to Lender and the performance of the Other Obligations (hereinafter defined); and

WHEREAS, this Security Instrument is given pursuant to the Loan Agreement, payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents as secured hereby, and each and every term and provision of the Loan Agreement, and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument (the Loan Agreement, the Note, this Security Instrument, and all other documents evidencing or securing or otherwise setting out conditions, covenants, representations and/or remedies in favor of Lender in connection with the funding of the Debt (including all additional mortgages, if any, to secure debt and assignments of leases and rents) or executed or delivered in connection therewith, are hereinafter referred to collectively as the *"Loan Documents").*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully in seisin (seized) of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  As of the date of the signed agreement, Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument below.

### CONDITIONS TO GRANT

**TO HAVE AND TO HOLD** the above granted and described Property, and its successor and assigns, for the benefit of Lender and its successors and assigns, forever, to secure Borrower's payment to Lender of the Debt and performance of the Other Obligations at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument;

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Borrower shall well and truly (a) pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, (b) perform the Other Obligations as set forth in the Loan Agreement, this Security Instrument and the other Loan Documents, and (c) abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be *void; provided, however,* that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

3

CMT Developers - - - Jersey Walk   (Mortgage)                                                Borrower's Initials: _____

## Article 1 - GRANTS OF SECURITY

**Section 1.1 <u>Property Conveyed.</u>** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender**, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION** for the benefit and security of Lender and does hereby grant a security interest in and assigns to Lender all of the real, personal, tangible and intangible property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the *"Property"*) the following as security for the owed debt of Borrower, including, without limitation,:

(a) <u>Land.</u> The real property described below attached hereto in additional construction loan documents and made a part hereof (the *"Land"*);

[Postal]

901-931 E. Jersey St., Elizabeth City, NJ

[Legal]

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and

being in the City of Elizabeth, County of Union, State of New Jersey being more particularly described as follows:

BEGINNING at a corner formed by the intersection of the Northerly sideline of East Jersey Street (70 feet ROW) and the easterly sideline of Reid Street (60 feet ROW); thence

(1) South 67 degrees 04 minutes 48 seconds East, along the said northerly sideline of East Jersey Street, 398.70 feet to a point of intersection with the westerly sideline of Jacques Street; thence

(2) North 22 degrees 55 minutes 12 seconds East, 590.80 feet along the said westerly sideline of Jacques Street (50 feet ROW) to a point in the Southerly sideline of Lafayette Street (60 feet ROW); thence

(3) North 67 degrees 04 minutes 48 seconds West, along the southerly sideline of Lafayette Street, 398.70 feet to the easterly line of Reid Street; thence

(4) Along the same, South 22 degrees 55 minutes 12 seconds West, 590.80 feet to the point and place of BEGINNING.

NOTE: Being known as 901-931 East Jersey Street, Elizabeth, New Jersey also designated as Tax Lot 7 in Tax Block 312 as shown on the Tax Map of the City of Elizabeth, County of Union.

(b) <u>Additional Land.</u> All additional parcels, lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

(c) <u>Improvements.</u> The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter

erected or located on the Land (collectively, the *"Improvements");*

    **(d)**   Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, rights of way and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

    **(e)**   Equipment. All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data- processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the *"Equipment").* Notwithstanding the foregoing, Equipment shall not include any property belonging to contractors or tenants under leases except to the extent that Borrower shall have any right or interest therein;

    **(f)**   Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the *"Fixtures").* Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases, except to the extent that Borrower shall have any right or interest therein;

    **(g)**   Personal Property. All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts

receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the ***"Personal Property"),*** and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the ***"Uniform Commercial Code"),*** superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

     **(h)**   <u>Leases and Rents.</u> All leases (including, without limitation, ground leases, subleases or sub-subleases), lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, sub-subleases, or other agreements entered into in connection with such leases, subleases, sub-subleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the ***"Leases"),*** whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. § 101 et seq., as the same may be amended from time to time (the ***"Bankruptcy Code")*** and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, deposits (including, without limitation, security, utility and other deposits) accounts and receipts from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the ***"Rents")*** and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt and the performance of the Other Obligations;

     **(i)**   <u>Condemnation Awards.</u> All Awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to all or any portion of the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of all or any portion of the Improvements, the Equipment, the Fixtures, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Property or any portion thereof; and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation;

     **(j)**   <u>Insurance Proceeds.</u> All Insurance Proceeds in respect of the Property under any Policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any Policies, judgments, or settlements made in lieu thereof, in connection with a Casualty to the Property;

(k) <u>Tax Certiorari.</u> All refunds, rebates or credits in connection with any reduction in taxes or other charges charged against the Property;

(l) <u>Conversion.</u> All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims;

(m) <u>Rights.</u> The right, in the name and on behalf of Borrower to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n) <u>Agreements.</u> To the extent assignable, all agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(o) <u>Trademarks.</u> To the extent assignable all trade names, trademarks, service marks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(p) <u>Accounts.</u> All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, all accounts established or maintained pursuant to the Loan Agreement, together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

(q) <u>Other Rights.</u> Any and all other rights of Borrower in and to the items set forth in Subsection (a) through (p) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land , the Improvements and the Fixtures collectively referred to as the **"Real Property")** appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and mortgaged hereby.

**Section 1.2 <u>Assignment of Rents.</u>** Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower ' s right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Assignment of Leases, the Loan Agreement and <u>Section 7.1(h)</u> of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

**Section 1.3 <u>Security Agreement.</u>** This Security Instrument is both a real property mortgage or deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or

intangible in nature, of Borrower in the Property including all accounts established by Lender pursuant to the Loan Agreement. By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the *"Collateral")*. If an Event of Default shall occur past any applicable Grace Period and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand all reasonable expenses, including reasonable legal expenses and attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper. Borrower's (debtor's) principal place of business is as set forth on the first page hereof and the address of Lender (secured party) is as set forth on the first page hereof.

**Section 1.4** **Fixture Filing.** Certain parts of the Property are or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement (naming Borrower as the Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

**Section 1.5** **Pledges of Monies Held.** Borrower hereby pledges to Lender and grants to Lender a security interest in any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any sums deposited in the Deposit Account, the Clearing Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Security Instrument.

**Section 1.6** **Additional Definitions.**

**(A)** **"Security Instrument"** means this document, together with all Riders to this document.

**(B)** **"Borrower"** Borrower is the mortgagor under this Security Instrument.

**(C)** **"Lender"** Lender is the mortgagee under this Security Instrument.

**(D)** **"Note"** means the promissory note signed by Borrower in connection with the Loan Documents. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full.

**(E)** **"Property"** means the property that is described above and below as well as under the heading "Transfer of Rights in the Property."

**(F)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CMT Developers - - - Jersey Walk (Mortgage)                                              Borrower's Initials: _____

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] | Adjustable Rate Rider | |
| [ ] | Balloon Rider | |
| [ ] | Other(s) [specify] | <u>NONE</u> |

 **(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.   Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearing house transfers.

**(J) "Escrow Items"** means those items that are described below including taxes and insurance proceeds necessary to maintain the property

**(K) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the policy coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(L) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(M) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### Section 1.7   <u>Uniform Covenants.</u>

**1.7.1  Payments.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

CMT Developers - - - Jersey Walk   (Mortgage)

Borrower's Initials: _____

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**1.7.2 Application of Payments or Proceeds.** Except as otherwise described in this Section, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**1.7.3. Intentionally Omitted.**

**1.7.4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided above.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth herein.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**1.7.5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage,"

CMT Developers - - - Jersey Walk  (Mortgage)                                    Borrower's Initials: _____  _____

and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time "remappings" or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied to the outstanding balance of the loan.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property through any remedy, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of

11

Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**1.7.6. Occupancy.** Borrower shall occupy, establish, and use the Property as described in the Loan Agreements, specifically as a proposed 274 Unit Multi Family project under construction, and will exclude any third party from possession of all or part of the Property.

**1.7.7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined that repair or restoration is not economically feasible, the determination of which will be made by the Lender, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**1.7.8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property and/or the eventual construction project.

**1.7.9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized hereunder.

Any amounts disbursed by Lender under this section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

12

CMT Developers - - - Jersey Walk  (Mortgage)                    Borrower's Initials:

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**1.7.10.  Priority Lien Prohibition.**  Borrower specifically agrees that the prohibited activities during the term of this contract include, but are not limited to, the sale of the property prior to the expiration of one year, optioning of the parcel, trading the parcel, mortgaging the parcel in a manner prioritizing the interest of any party other than Lender, renting the parcel, using the parcel other than the limited use described in the construction agreement(s), causing the parcel to be subject to a lien, granting an easement on the parcel, or other impediment to the parcel.  Failure to abide by these terms shall be a material breach.

**1.7.11 Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**1.7.12.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Lender acknowledges and agrees that Borrower's and co-signor's obligations and liability under this Security Instrument and associated loan documents shall **NOT** be joint and several with the corporate entity with the exception of the items or actions described in the Exceptions to Non-Recourse Guaranty of even date.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument or Exceptions to Non-Recourse Guaranty unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument and the Exceptions to Non-Recourse Guaranty shall bind and benefit the successors and assigns of Lender.

**1.7.13 Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a

Borrower's Initials: _____

prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**1.7.14  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address above unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**1.7.15  Borrower's Copy.**  Borrower shall be given one copy of the Loan documents, including the Note and of this Security Instrument.  Any copy by either party shall be deemed a verified copy for the purposes of enforcement.

**1.7.16.  Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information necessary for transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower and the notice of acceleration given to Borrower shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section.

CMT Developers - - - Jersey Walk   (Mortgage)                                      Borrower's Initials: _____  _____

**1.7.17. Hazardous Substances.** As used herein: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge,   (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**1.7.18. Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

## ARTICLE 2 - DEBT AND OBLIGATIONS SECURED

**Section 2.1 Debt.** This Security Instrument and the grants, assignments and transfers made in Article 1  hereof are given for the purpose of securing the Debt.

**Section 2.2 Other Obligations.** This Security Instrument and the grants, assignments and transfers made in Article 1 hereof are also given for the purpose of securing the following (the ***"Other Obligations"):***

    (a)    the performance of all other obligations of Borrower contained herein;

    (b)    the performance of each obligation of Borrower contained in the Note, the Loan Agreement and any other Loan Document; and

    (c)    the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 2.3 Debt and Other Obligation**.  Borrower's obligation for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the ***"Obligations."***

CMT Developers - - - Jersey Walk  (Mortgage)                                        Borrower's Initials:

## ARTICLE 3 - BORROWER COVENANTS

Borrower covenant and agree that:

**Section 3.1 <u>Payment of Debt.</u>** Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

**Section 3.2 <u>Incorporation by Reference.</u>** All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

**Section 3.3 <u>Insurance.</u>** Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

**Section 3.4   <u>Maintenance of Property.</u>** Borrower shall cause the Property to be maintained in a good and safe condition and repair. The initial construction of the Improvements shall be constructed in a workmanlike manner in full compliance with applicable codes and construction industry standards. Once the said Improvements have been constructed as aforesaid, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender or as otherwise permitted pursuant to the Loan Agreement. Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land. So long as no default or event of default is outstanding by Borrower or any Non-Recourse Guarantor, Lender shall make available to Borrower any insurance proceeds to make repairs.

**Section 3.5 <u>Waste.</u>** Borrower shall neither commit nor allow anyone else to commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

**Section 3.6 <u>Payment for Labor and Materials.</u>** (a) Subject to <u>Section 3.6 (b)</u> hereof, Borrower (i) will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials *("Labor and Material Costs")* incurred in connection with the Property, (ii) never permit to exist beyond the due date thereof in respect of the Property or any part thereof any Lien or security interest, even though inferior to the Liens and security interests created hereby and by the other Loan Documents, and (iii) never permit to be created or exist in respect of the Property or any part thereof any other or additional Lien or security interest other than the Liens or security interests created hereby and by the other Loan Documents except for the Permitted Encumbrances, (b) After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Security Instrument or any of the other Loan Documents, (ii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and Borrower shall have paid all of the Labor and Material Costs under protest, (iii) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (iv) neither the Property nor any part thereof or interest therein will be in danger of

16

being sold, forfeited, terminated, canceled or lost, and (v) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender, to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

**Section 3.7 <u>Performance of Other Agreements.</u>**   Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting  or pertaining to the Property and any amendments, modifications or changes thereto.

**Section 3.8 <u>Change of Name, Identity or Structure.</u>** Borrower shall not change its name, identity (including its trade name or names) or, if not an individual, Borrower's corporate, partnership or other structure without notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change and, in the case of a change in Borrower's structure, without first obtaining the prior written consent of Lender. Borrower shall execute and deliver to Lender, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Lender to establish or maintain the validity, perfection and priority of the security interests granted herein. At the request of Lender from time to time, Borrower shall execute a certificate in form satisfactory to Lender listing the trade name(s) under which Borrower is operating or intends to operate the Property and representing and warranting that Borrower does business under no other trade name with respect to the Property.

## ARTICLE 4 - OBLIGATIONS AND RELIANCE'S

**Section  4.1 <u>Relationship of Borrower and Lender.</u>** The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Loan Agreement, the Note, this Security Instrument or any other Loan Document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

**Section 4.2 <u>No Reliance on Lender.</u>** The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

### Section 4.3 <u>No Lender Obligations</u>

(a)    Notwithstanding the provisions of this security interest on the loan agreement, Lender is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any Officer's Certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or Policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect  thereto  by Lender.

**Section  4.4 <u>Reliance.</u>** Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in <u>Section 2</u> of the Loan Agreement without any obligation to investigate the Property and notwithstanding any

CMT Developers - - - Jersey Walk   (Mortgage)                                                          Borrower's Initials:

investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in <u>Section 2</u> of the Loan Agreement.

## ARTICLE 5 - FURTHER ASSURANCES

**Section 5.1 <u>Recording of Security instrument, etc</u>.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and to fully protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

**Section 5.2    <u>Further Acts, etc</u>.**   Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for complying with all Legal Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation, such rights and remedies available to Lender pursuant to this <u>Section 5.2</u>.

**Section 5.3    <u>Changes in Tax, Debt, Credit and Documentary Stamp Laws</u>.**

(a)    If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender, unenforceable or provide the basis for a defense of usury, then Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(b)    Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed

18

value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c)   If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents, or shall impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**Section 5.4 Severing of Security Instrument.** This Security Instrument and the Note may, at any time until the same shall be fully paid and satisfied, at the sole election of Lender, be severed into two or more notes and two or more security instruments in such denominations as Lender shall determine in its sole discretion, each of which shall cover all or a portion of the Property to be more particularly described therein. To that end, Borrower, upon written request of Lender, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Lender and/or its designee or designees substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses substantially similar to those contained herein and in the Note, and such other documents and instruments as may be required by Lender.

**Section 5.5 Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor, and referencing that it is a replacement document. Lender shall indemnify Borrower against liability as a result of claims made under the original Loan Documents.

## ARTICLE 6 - DUE ON SALE/ENCUMBRANCE

**Section 6.1 Lender Reliance.** Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for the repayment of the Debt and the performance of the Other Obligations. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2 No Sale/Transfer.** Borrower shall not Transfer the Property or any part thereof or any interest therein or permit or suffer the Property or any part thereof or any interest therein to be Transferred other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE 7 - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1  Remedies.**  Upon the occurrence and during the continuance of any Event of Default past any appropriate Grace Period, Borrower agrees that Lender may take such action, without notice or demand to the fullest extent permitted by law, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may

CMT Developers - - - Jersey Walk   (Mortgage)                                          Borrower's Initials:

be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender :

      (a)    declare the entire unpaid Debt to be immediately due and payable;

      (b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

      (c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Security Instrument for the balance of the Debt and the Other Obligations not then due, unimpaired and without loss of priority;

      (d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; and without limiting the foregoing:

          (i)    in connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property. Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

          (ii)    Lender shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender;

          (iii)    should Lender elect to sell any portion of the Property which is Real Property, or which is Personal Property, Equipment or Fixtures that Lender has elected under applicable law to sell together with Real Property in accordance with the laws governing a sale of the Real Property, Lender shall give such notice of the occurrence of an Event of Default, if any, and its election to sell such Property as may then be required by law. Thereafter, upon the giving of such notice of sale and the expiration of any required time period as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower or Lender at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States. Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale; and

CMT Developers - - - Jersey Walk   (Mortgage)          Borrower's Initials: _____

(iv)    if the Property consists of several lots, parcels or items of property, Lender shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender designates in Lender's sole discretion. Any Person, including the Borrower or Lender, may purchase at any sale hereunder. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Security Instrument on any part of the Property not sold until all the Obligations have been satisfied in full. In the event Lender elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or in the other Loan Documents or cause the Lender to foreclosure the Property in accordance with the provisions of Section 15.3 hereof;

(f) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof;

(h)    the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys, and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vi) apply the receipts from the Property to the payment of the Debt and the performance of the Other Obligations, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary  to pay the taxes, other charges, Insurance Premiums and other expenses in

CMT Developers - - - Jersey Walk  (Mortgage)                                    Borrower's Initials:

connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)       exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and/or the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and/or the Personal Property, and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment and/or the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)       apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document to the payment of the following items in any order in its sole discretion:

(i)       Taxes and other charges;

(ii)      Insurance Premiums;

(iii)     Interest on the unpaid principal balance of the Note;

(iv)     Amortization of the unpaid principal balance of the Note; or

(v)      All other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including, without limitation, the Yield Maintenance Fee, if applicable, and advances made by Lender pursuant to the terms of this Security Instrument;

(k)      pursue such other remedies as Lender may have under applicable law; or

(l)       apply the undisbursed balance of any net proceeds deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its sole and absolute discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

**Section 7.2 <u>Application of Proceeds.</u>** The purchase money proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

**Section 7.3 <u>Right to Cure Defaults.</u>** Upon the occurrence and during the continuance of any Default or Event of Default past any applicable Grace Period, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any Other Obligations hereunder, make any payment or do any act required of Borrower hereunder or in the other Loan Documents with respect to any Other Obligations which payment or action on the part of Lender shall be in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or to collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and expenses to the extent

22

permitted by law), with interest as provided in this <u>Section 7.3</u>, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying any Default or Event of Default or in appearing in, defending, or bringing any such action or proceeding, as hereinabove provided, shall bear interest at the Default Rate, for the period beginning on the first day after notice from Lender that such cost or expense was incurred and continuing until the date of payment to Lender. All such costs and expenses incurred by Lender, together with interest thereon calculated at the Default Rate, shall be deemed to constitute a portion of the Debt and to be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 7.4 <u>**Actions and Proceedings.**</u> Lender, or either of them, has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole and absolute discretion, decides should be brought to protect its interest in the Property.

Section 7.5 <u>**Recovery of Sums Required To Be Paid.**</u> Lender shall have the right, from time to time, to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for any Default or Event of Default by Borrower existing at the time such earlier action was commenced.

Section 7.6 <u>**Examination of Books and Records.**</u> At reasonable times and upon prior reasonable notice (which may be given verbally), Lender, its agents, accountants and attorneys shall have the right to examine the records, books and management and other papers of Borrower which reflect upon its financial condition, at the Property or at any office regularly maintained by Borrower where the books and records are located. Lender and its agents shall have the right to make copies and extracts from the foregoing records and other papers. In addition, at reasonable times and upon reasonable notice (which may be given verbally), Lender, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Borrower pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Borrower where the books and records are located. This <u>Section 7.6</u> shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing, as long as Lender exercises such right no more than once a quarter with reasonable notice to Borrower.

Section 7.7 <u>**Other Rights, etc.**</u>

(a)    The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Nate or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Obligations or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)    It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

CMT Developers - - - Jersey Walk   (Mortgage)                                                    Borrower's Initials: ____ ____

(c)    Lender may resort for the payment of the Debt and the performance of the Other Obligations to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce the Other Obligations or any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 7.8  Right to Release Any Portion of the Property.**  Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the Lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a Lien and security interest in the remaining portion of the Property.

**Section 7.9  Violation of Laws.** If the Property is not in full compliance with any Legal Requirement, Lender may impose additional requirements upon Borrower in  connection  herewith including, without limitation, monetary reserves or financial equivalents.

**Section 7.10  Non-Recourse and Choice of Remedies.** Lender agrees that except as specified in this Section 14 of the Promissory Note and the Exceptions to Non-Recourse Guaranty, its recourse for recovery of the Loan is limited to the Collateral encumbered in its favor under the Loan Documents. Notwithstanding any other provision of this Security Instrument or the Loan Agreement, Lender and other Indemnified Parties are entitled to enforce the obligations of Borrower and any guarantor or indemnitor herein Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender from foreclosing or exercising its power of sale pursuant to this Security Instrument or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower whether or not an action is brought against any other Person and whether or not any other Person is joined in the action or actions. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed herein.

**Section 7.11  Right of Entry.** Upon reasonable notice to Borrower (which may be given verbally), Lender and its agents (including any hired third party) shall have the right to enter and inspect the Property at all reasonable times, with or without formal written notice.  Lender will attempt to provide no less than 24 hours notice to Borrower.

**Section 7.12  Lender Not Obligated; Cumulative Rights.** Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Property, and all options given to Lender are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide. Each remedy is distinct and cumulative to all other rights and remedies under this Instrument and the Loan Documents or afforded by law or equity, and may be exercised concurrently, independently or successively, in any order whatsoever.


## ARTICLE 8 - MORTGAGE TAX INDEMNIFICATION

**Section 8.1  Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect,

CMT Developers - - - Jersey Walk  (Mortgage)                                               Borrower's Initials:

defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all losses imposed upon, incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

## ARTICLE 9 - WAIVERS

Section 9.1 **Waiver of Counterclaim.** To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

Section 9.2 **Marshalling and Other Matters**. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES THE BENEFIT OF STAY, EXTENSION, REINSTATEMENT, HOMESTEAD AND REDEMPTION LAWS NOW OR HEREAFTER IN FORCE AND ALL RIGHTS OF MARSHALLING IN THE EVENT OF ANY SALE HEREUNDER OF THE PROPERTY OR ANY PART THEREOF OR ANY INTEREST THEREIN. FURTHER, TO THE EXTENT PERMITTED BY APPLICABLE LAW BORROWER HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR DECREE OF FORECLOSURE OF THIS SECURITY INSTRUMENT AND NOTICE OF INTENTION TO MATURE OR DECLARE DUE THE WHOLE OF THE DEBT ON BEHALF OF BORROWER, AND ON BEHALF OF EACH AND EVERY PERSON ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS SECURITY INSTRUMENT.

Section 9.4 **Waiver of Statute of Limitations.** To the extent permitted by applicable law, Borrower hereby expressly waives and releases its right to plead any statute of limitations as a defense to payment of the Debt or performance of the Other Obligations.

## ARTICLE 10 - EXCULPATION

The provisions of the Loan Agreement are hereby incorporated by reference into this Security Instrument to the same extent and with the same force as if fully set forth herein.

## ARTICLE 11 - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with the Loan Agreement.

## ARTICLE 12 - APPLICABLE LAW

Section 12.1 **Governing Law; Jurisdiction; Service of Process.** Except as otherwise provided, this Security Instrument will be governed and construed in accordance with the laws of the State in which the Property is located (without regard to conflict of law provisions thereof). All provisions of the Loan Agreement incorporated herein by reference shall be governed by, and construed in accordance with, the laws of the State in which the Property is located.

Section 12.2 **Provisions Subject to Applicable Law.** All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof

Borrower's Initials: _____

shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE 13 - DEFINITIONS

All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in the singular or plural form and the word "Borrower" shall mean "Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Borrower" shall mean "Borrower and any subsequent obligors on the Note," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns and pronouns shall include the plural and vice versa.

## ARTICLE 14 - MISCELLANEOUS PROVISIONS

**Section 14.1  No Oral Change.**  This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 14.2  Successors and Assigns.**  This Security Instrument shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement. Lender shall have the right to assign or transfer its rights under this Security Instrument in connection with any assignment of the Loan and the Loan Documents. Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Security Instrument. Borrower shall not have the right to assign or transfer its rights or obligations under this Security Instrument without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

**Section 14.3  Inapplicable Provisions.**  If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

**Section 14.4  Headings, etc.**  The headings and captions of the various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 14.5  Subrogation.**  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the payment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the

CMT Developers - - - Jersey Walk  (Mortgage)                                    Borrower's Initials:

Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 14.6 <u>Entire Agreement.</u>** The Note, the Loan Agreement, this Security Instrument and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Security Instrument and the other Loan Documents.

**Section 14.7 <u>Limitation on Lender's Responsibility.</u>** No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

**Section 14.8 <u>Principles of Construction.</u>** In the event of any inconsistencies between the terms and conditions of this Security Instrument and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall control and be binding.

**Section 14.9 <u>Severability.</u>** In case any one or more of the provisions of this Security Instrument, the Note, the Assignment of Leases, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof. Each of the provisions of every such agreement, document or instrument shall be enforceable by Lender to the fullest extent now or hereafter permitted by law.

**Section 14.10 <u>No Partnership or Joint Venture.</u>** No provision of this Security Instrument or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender, it being intended that the only relationship created by this Security Instrument, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

**Section 14.11 <u>No Merger.</u>** So long as the Obligations owed to Lender secured hereby remain unpaid and undischarged and unless Lender otherwise consents in writing, the fee, leasehold, subleasehold and sub-subleasehold estates in and to the Property will not merge but will always remain separate and distinct, notwithstanding the union of such estates (without implying Borrower's consent to such union) either in Borrower, Lender, any tenant or any third party by purchase or otherwise, in the event this Security Instrument is originally placed on a leasehold estate and Borrower later obtains fee title to the Property, such fee title will be subject and subordinate to this Security Instrument.

**Section 14.12 <u>Quiet Enjoyment</u>**. So long as Borrower is not in Default, past any applicable Grace Period, under this Agreement, the Note or any Loan Document, it shall be free from interference by Lender in Borrower's construction, development, and operation of the Property and project. Nothing contained herein shall give Lender any rights in or to portions of the hospital, hotel or retail project connected to the Land that is not owned directly by Borrower. This Security Agreement is intended to attach only to the Land and Property defined in the Loan Documents.

**Section 14.13 <u>Counterparts.</u>** This Agreement may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All counterparts will be construed

CMT Developers - - - Jersey Walk  (Mortgage)                                                    Borrower's Initials: _____

together and will constitute one instrument.

## ARTICLE 15 – REMEDIES UPON DEFAULT; POWER OF SALE

**Section 15.1 <u>Default, General Remedies.</u>** If Borrower is in default due to Borrower's failure to perform or comply with the covenants, conditions or terms of this contract, Lender may give Borrower written notice specifying the default which has occurred and inform Borrower in such notice that the default must be cured within fifteen (15) days from the date of the notice. In the event of non-payment for any of the regularly occurring installments as above, the remedy is payment and will not be offset or limited by any and all legal or equitable claims and defenses. In the event the default is not cured in the fifteen (15) day time period, the Lender may give Borrower written notice specifying Borrower's failure to cure the default and notify Borrower that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure that without further notice the contract will be in default. Borrower agrees that in the event of a default, the entire outstanding balance under this contract may become immediately due and payable at Lender's option (which Borrower hereby waives), and Lender may singly, alternatively or in combination: (i) terminate this Contract and either recover the Property through ejectment of Borrower or have the Property sold by foreclosure sale; in either event, with a period of redemption, in the Court's discretion, to be conditioned on full payment of the entire outstanding balance, with interest thereon from the date of default and other amounts due hereunder (failing which all amounts previously paid by Borrower shall be forfeited as liquidated damages for failure to fulfill this Contract and as rental for the Property); (ii) sue for specific performance of this Contract; (iii) sue for the unpaid purchase price or any portion thereof; (iv) declare this Contract at an end and remove this Contract as a cloud on title in a quiet-title action if the equitable interest of Borrower is insignificant; (v) have Borrower ejected from possession of the Property and have a receiver appointed to collect any rents, issues or profits; (vi) provide to Lender the principal portion of payments made by Borrower (credit balance) and consider the principal, paid interest, remaining interest and appreciation liquidated damages in favor of Lender, or (vii) pursue any other remedy available in law or equity. All costs and expenses including reasonable attorney fees of Lender incurred to pursue any remedy hereunder, including attorney's fee, to the extent not prohibited by law and expenses of title evidence shall be paid by Borrower and included in any judgment. The parties agree that Lender shall have the options set forth in this paragraph available to exercise in Lender's sole discretion. If the Lender is in breach, the Borrower shall have any of the options or remedies described above, including specific performance (same as Lender).

In the event of default and the remaining indebtedness being accelerated, Borrower shall have any right of reinstatement as allowed under the laws of the State of New Jersey (if any), provided that Borrower:

a.      Pays all sums due under this contract as if no acceleration had occurred;

b.      Cures any other than existing defaults due to Borrower's failure to perform or comply with the covenants, conditions or terms of this contract;

c.      Pays all expenses incurred in enforcing this contract, including, but not limited to, reasonable attorneys' fees, and all other fees incurred for the purpose of protecting Lender's interest in the Premises and Lender's rights under this Contract.

Upon reinstatement by Borrower, this contract and the obligations secured by this contract shall remain in full force and effect as if no acceleration had occurred.

In the event of default, Borrower shall pay to Lender, Lender's reasonable and actual attorney's fees and expenses incurred by Lender in enforcement of any rights of Lender. All attorneys' fees shall be payable prior to Borrower being deemed to have corrected or cured any such default.

For the purposes if this contract, the word "may" gives sole discretion without any obligation to take action, and thus, failure of Lender to exercise his/her rights under this contract shall not be deemed as a waiver by Lender to exercise said rights at any time. Lender may enforce his/her (Lender's) rights under

CMT Developers - - - Jersey Walk   (Mortgage)                                          Borrower's Initials:

this Contract according to the laws of the State of New Jersey.  Waiver by the Lender of a default or a number of defaults in the performance hereof by the Borrower shall not be construed as a waiver of any future default no matter how similar.

**Section 15.2 Acceleration; Remedies.**  In the event of non-payment, Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**Section 15.3   Power of Sale after Foreclosure.**

(a)    Upon the occurrence of an Event of Default, Lender, or the agent or successor of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located. Such sale shall be made at the area within the courthouse  of the county  in which the Property (or any portion thereof to  be sold)  is situated (whether  the parts or parcels thereof,  if  any, in different counties are contiguous or not, and without the necessity of having any personal property hereby secured present at such sale) which  is designated  by the  applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at  the courthouse designated in the notice of sale as the area  in which the sale will  take  place, on  such day and at such  times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after  having  served written or printed notice of the proposed sale by certified mail on  the  Borrower obligated  to pay the  Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

At any such public sale, Lender may execute and deliver in the name of Borrower to the purchaser a conveyance of the Property or any part of the Property in fee simple. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, the Lender may sell the personal property covered by this Security Instrument at one or more separate sales in any manner permitted law and/or by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the Note and other secured indebtedness is paid in full. If the Note and other secured indebtedness is now or hereafter further  secured  by any  chattel mortgages, pledges, contracts or guaranty,

CMT Developers - - - Jersey Walk   (Mortgage)                                      Borrower's Initials:

assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(b)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Debt as a credit to the purchase price.

(c)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide; to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of any appointed Receiver and/or Trustee (including, without limitation, Receiver and/or Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Debt, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Borrower, or to the person or entity lawfully entitled thereto.

(d)     In case Lender shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Borrower and Lender shall be restored to their former positions and the rights, powers and remedies of Lender herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

**Section 15.4  Deed in Lieu of Foreclosure.** Lender, at its sole discretion reserves the right to request a Deed in Lieu of foreclosure if the Borrower is more than 120 days in arrears, for which the signature from the Borrower shall not be unreasonably withheld. Lender shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Lender is reasonably indemnified against loss, cost, liability and expense.

**Section 15.5  No Liability of Lender.**

(a)     The Lender shall not be liable for any error of judgment or act done by the Lender in good faith or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Lender's willful negligence or gross misconduct. The Lender shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Lender in good faith to be genuine. All moneys received by the Lender shall, until used or applied as herein provided, be held in trust for the purposes for which they were received but need not be segregated in any manner from any other moneys (except to the extent required by law or under the Loan Documents).

(b)     Borrower shall indemnify, protect, defend and hold Lender harmless, singularly and jointly, from all costs and expenses, including reasonable attorney's fees, incurred by them or any of them by reason of this Security Instrument, including any legal action to which Lender shall become a party due to default, negligence or other failure of Borrower. Any money so paid or expended by Lender shall be due and payable upon demand together with interest at the Default Rate from the date incurred and shall be secured by this Security Instrument.

**Section 15.6  Priority.** All amounts advanced by either of Lender hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

CMT Developers - - - Jersey Walk  (Mortgage)                    Borrower's Initials:

Section 15.7 **Ratification.** Borrower hereby ratifies and confirms every act that Lender and its successors may lawfully do at the Property by virtue of powers granted to Lender hereunder.

Section 15.8 **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (subject to any existing jurisdictional allowances and/or laws): (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.

# ARTICLE 16 - STATE-SPECIFIC PROVISIONS

Section 16.1 **Principles of Construction.** In the event of any inconsistencies between the terms and conditions of this Article 16 and the terms and conditions of this Security Instrument, the terms and conditions of this Article 16 shall control and be binding.

Section 16.2 **Sale of the Property.**

(a) In the Event of Default, past any applicable Grace Period, and after a judgments of foreclosure has been entered, Lender, shall have the power to sell all or any part of Borrower's interests in the Property at public auction, to the highest bidder for cash, after first having obtained such notice of hearing as to the commencement of foreclosure proceedings and having obtained such finding or leave of court as then may be required by law and then having given such notice and advertised the time and place of such sale in such manner as then may be provided by law, and upon such sale and any resale and upon compliance with the law then relating to foreclosure proceedings and power of sale, to convey title to the purchaser in fee simple. Borrower agrees that in the event of a sale hereunder, Lender shall have the right to bid at such sale and shall have the right to credit the indebtedness secured hereby against the purchase price. If personal property is sold hereunder, it need not be at the place of sale. The Property may be sold as a whole or as separate parcels and such sales may be conducted simultaneously or otherwise, all as Lender, in its reasonable discretion, deems to be in the best interest of the parties. Should Lender elect to sell the Property as separate parcels, the exercise of the power of sale with respect to one or more of such parcels shall not extinguish or otherwise affect the right to exercise the power of sale with respect to the remainder of the Property. The proceeds or avails of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Lender under this Security Instrument, whether under the provisions of this paragraph or otherwise, shall be applied as provided in this Security

CMT Developers - - - Jersey Walk   (Mortgage)                                        Borrower's Initials: _____

Instrument. Lender, and appointed Trustee and/or any Receiver or Custodian of the Property or any part thereof shall be liable to account for only those Rents, Issues, and Profits and proceeds actually received by it.

(b)   To the extent permitted by applicable law, Lender, as applicable, may adjourn from time to time any sale by it to be made under or by virtue of this Security Instrument by announcement at the time and place appointed for such sale or for such adjourned sale or sales and, except as otherwise provided by any applicable law, Lender, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(c)   Upon the completion of any sale or sales ordered by Lender by virtue of this paragraph, Lender, or any officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, granting, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any such sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity of the Borrower in and to the property and rights so sold, and shall, to the furthest extent permitted under law, be a perpetual bar both at law and in equity against the Borrower and against any and all persons claiming or who may claim the same, or any party thereof, from through or under Borrower.

(d)   In the event of any sale made under or by virtue of this Security Instrument (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale), the entire indebtedness secured hereby shall, immediately thereupon and anything in the Loan Agreement, this Security Instrument, or any other of the Loan Documents to the contrary notwithstanding, become due and payable.

(e)   Upon any sale under or by virtue of this Security Instrument (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale), Lender may bid for and acquire the Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting the indebtedness secured hereby to and against the net sales price after deducting therefrom the expenses of sale and the costs of the action.

(f)   No recovery of any judgment by Lender and no levy of an execution under any judgment upon the Property or any part thereof or upon any other property of Borrower shall release the lien of this Security Instrument upon the Property or any part thereof, or any liens, rights, powers or remedies of Lender hereunder, but such liens, rights, powers and remedies of Lender shall continue unimpaired until the entire indebtedness secured hereby is paid in full.

**Section 16.3 <u>After-acquired Property.</u>** To the extent allowed under law, all property acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further mortgage, conveyance or assignment become subject to the lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, security agreements, financing statements, assignments and assurances, as Lender shall require in order for the lien and security interest on such after-acquired property to be effective against lien creditors and purchasers for value and otherwise to accomplish the purposes of this Security Instrument.

CMT Developers - - - Jersey Walk   (Mortgage)                                      Borrower's Initials:

**Section 16.4 <u>Attorneys' Fees.</u>** As used herein and in all other Loan Documents, the phrases "attorneys' fees", "attorney's fees", "reasonable attorneys' fees" and the like shall refer to the reasonable fees of Lender's outside legal counsel computed on the basis of the regular billing rates of the attorneys and paralegals involved in such matter, the number of hours actually worked by such attorneys and paralegals and the complexity of the issues involved.  For any default, Lender is entitled to attorney fees.

*[Remainder of page intentionally left blank. Signatures on following page.]*

CMT Developers - - - Jersey Walk   (Mortgage)

Borrower's Initials:

IN WITNESS WHEREOF, this Security Instrument has been executed by Borrower as of the day and year first above written.

**BORROWER:  CMT DEVELOPERS, LLC**

Signed: _____       Date: _____
Name:          David Kramer
Title:          Managing Member

Signed: _____       Date: 9/26/18
Name:          Dov B. Zabrowsky
Title:          Member

Signed: _____       Date: 9/24/18
Name:          Martin Zelcer
Title:          Member

Signed: _____       Date: 9/26/2018
Name:          Yaakov Glatzer
Title:          Member

Signed: _____       Date: 9/26/18
Name:          Moshe Glatzer
Title:          Member

State of New York )
County of Kings )

Before me, David Friedman of the state and county mentioned, personally appeared **David Kramer, Dov B. Zabrowsky, Martin Zelcer, Yaakov Glatzer and Moshe Glatzer** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be the officers of **CMT DEVELOPERS, LLC**, the within named bargainor, a limited liability company, and that such officers executed the foregoing instrument for the purpose therein contained, by personally signing their names.

Witness my hand, at office, this 26 day of Sep, 20 18 .

_____
Notary's Signature

DAVID FRIEDMAN
Notary Public, State of New York
No. 01FR6346321
Qualified in Sullivan County
Commission Expires 08/08/2020

My commission expires: _____                    *(Seal)*

CMT Developers - - - Jersey Walk   (Mortgage)

34

Borrower's Initials: _____